ROBERT S. BREWER JR.
United States Attorney
KATHERINE L. PARKER, SBN 222629
Chief, Civil Division
SAMUEL W. BETTWY, SBN 94918
Assistant U.S. Attorney
CAROLINE C. PRIME, SBN 220000
Assistant U.S. Attorney
REBECCA G. CHURCH, SBN 259652
Assistant U.S. Attorney
MORGAN P. SUDER, SBN 292499
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-9634/7125/7183/7721/8819 / 619-546-7751 (fax)

Attorneys for Respondents

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISSIS YOSELIN ZELAYA SAGASTUME, et. al.,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement, et. al.,<br><br>Defendants-Respondents. | Case No. 20-cv-0658 LAB MSB<br><br>RESPONDENTS' RESPONSE TO REQUEST FOR TEMPORARY RESTRAINING ORDER |

Petitioners seek extraordinary relief for violation of their Fifth Amendment rights, based on an alleged failure by Respondents, who are working to protect everyone who is detained and/or working at the Otay Mesa Detention Center (OMDC) and the Imperial Regional Detention Facility (Imperial) from COVID-19. All four petitioners have been released, so this case is moot and should be dismissed.[1]

---

[1] There is no personal jurisdiction over Petitioners' non-habeas claims. *See* Fed. R. Civ. P. 4(c), 4(i)(1)(A)(i) (no summons; no service); ECF No. 1-1 (filed as habeas action;

The welfare of detainees and inmates is the top priority of medical professionals of ICE's Health Service Corps (IHSC), and they have been placing their own lives at risk to carry out that mission in close conjunction with ICE's Enforcement and Removal Operations (ERO) and CoreCivic employees, who share that top priority. Petitioners' action is a distillation of some of the more dire situations and therefore exemplifies that IHSC is closely following the guidelines of the Centers for Disease Control (CDC) to reconsider parole, under appropriate conditions, for those who are "high-risk" for severe illness due to COVID-19. ICE has granted parole (release) to all four petitioners. All four release decisions were made despite weighty risks of flight that these petitioners pose. Petitioners' claims, which have been brought prematurely, show that Respondents are closely following CDC guidelines for the safety of all involved, especially the safety of detainees, the people who are working to protect them, and the public at large.

I

STATEMENT OF FACTS

On or about April 10, 2020, Petitioner Issis Yoselin Zelaya Sagastume, aka Issis Hernandez Arguijo (Petitioner Sagastume) was granted release from custody upon the posting of a $10,000 bond and a medical clearance from IHSC.[2] [Ex. 13.] During her detention at OMDC, it was determined that she had a history of tuberculosis (TB), and it was inconclusive as to whether she had active TB, so as a precaution, she was treated until it was confirmed that the TB was not active.[3] [*Contrast* ECF No. 2-3 at ¶ 9 (Petitioner's allegations).]

---

$5 fee); *Mittelstadt v. Wall*, No. 14cv423, 2014 WL 5494169, at *1 (W.D. Wisc. Oct. 30, 2014) (petitioner was "attempting to combine claims that belong in a habeas corpus action along with civil claims that should be brought under 42 U.S.C. § 1983."); *Hernandez-Morales v. Sec'y, Dep't of Homeland Sec.*, No. 1:18-CV-505, 2019 WL 2330858 (S.D. Ohio May 31, 2019) (same); *Avery v. Phillips*, No. 2:14-cv-1276-STA, 2016 WL 94143, at *2 (W.D. Tenn. Jan. 7, 2016) (same).

[2] The undersigned have not yet obtained the document showing that Petitioner Sagastume was released from custody. They were informed by Petitioners' counsel and ICE counsel that she was released on or about April 10, 2020.

[3] The undersigned were informed of this by ICE. Because Petitioner has been released, the details of her medical condition need not be detailed.

She is a native and citizen of Honduras who entered the United States without inspection on or about March 16, 2003. She was immediately apprehended and placed in removal proceedings in Dallas, Texas. [Exs. 1-2.]. On May 15, 2003, she did not appear for her initial appearance before the Immigration Judge (IJ), so she was ordered removed to Honduras *in absentia*. [Exs. 8-12.] In December 2019, ICE apprehended her, and she was detained at OMDC, pending efforts to execute the 2003 final order of removal. [Exs. 3-7.] On January 16, 2020, she, through counsel, filed a motion to reopen her removal proceedings. [Exs. 8-12; ECF No. 2-3 at ¶¶ 4, 7.] The IJ denied her motion to reopen, and her appeal of that decision is pending at the Board of Immigration Appeals (BIA). [*Id.*]

Petitioner Miguel Benitez was detained at OMDC and has leukemia. [ECF No. 1, ¶ 31.] On April 9, 2020, ICE determined that he should be released on $10,000 bond and reporting requirements. [Ex. 20.] On or about April 10, 2020, he was released from ICE custody after posting the bond. [Ex. 21.] He is a native and citizen of El Salvador who was removed from the United States to El Salvador on July 7, 2015, and again on May 9, 2018. [Exs. 14-17; ECF No. 2-6 at ¶ 4.] On June 3, 2019, he applied for admission at the San Ysidro Port of Entry, seeking asylum. [Exs. 18-19.] He was detained pending his ongoing removal proceedings at OMDC. [*Id.*]

Petitioner Yusuf Ozdemir was detained at Imperial and is HIV positive. [ECF No. 1, ¶ 32.] On April 9, 2020, ICE reviewed his custody status and released him from custody. [Ex. 41.] He is a native and citizen of Turkey, and on May 23, 2019, he applied for admission to the United States, seeking asylum and was placed in removal proceedings. [Exs. 26-27.] The IJ denied his asylum application and ordered him removed to Turkey, and the BIA affirmed the decision on March 23, 2020. [Exs. 28-40.] His time to petition for review by the Ninth Circuit has not expired. *See* 8 U.S.C. § 1252(b)(1) ("The petition for review must not be filed not later than 30 days after the date of the final order of removal."

Petitioner Jane Doe, the common law wife of Petitioner Ozdemir, is HIV positive and was also detained at Imperial. [ECF No. 1, ¶ 32.] On April 9, 2020, ICE released her. [Ex. 47.] She is a native and citizen of Russia, and on May 23, 2019, she applied for admission

to the United States, seeking asylum and was placed in removal proceedings. [Exs. 45-46 (NTA).] The IJ denied her asylum application and ordered her removed to Russia, the BIA affirmed the decision, and her petition for review is pending at the Ninth Circuit.

On March 11, 2020, the World Health Organization (WHO) characterized the COVID-19 outbreak as a pandemic. *See* WHO, *WHO Director-General's opening remarks at the media briefing on COVID-19 - 11 March 2020*, Mar. 11, 2020, https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 ("We have therefore made the assessment that COVID-19 can be characterized as a pandemic.").

Petitioners commenced this case on April 3, 2020, seeking release from custody. [ECF No. 1.] On April 4, 2020, ICE issued nationwide, supplemental guidance providing for the review of custody status for detainees with medical conditions that place them at a higher risk for serious illness from COVID-19. [Exs. 54-56.]

OMDC has a healthcare facility onsite, which is managed by IHSC, which is comprised "of U.S. Public Health Service Commissioned Corps (USPHS) officers, federal civil servants, and contract health professionals." [Declaration of Philip Farabaugh, paras. 2-4 (ECF No. 11-2 in *Habibi v. Barr*, 20-cv-00618-BAS-RBB (S.D. Cal.) (accompanying this Response).]

II

ARGUMENT

A. LEGAL STANDARD

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to

suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation and internal quotation marks omitted).

An injunction is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged [] – a 'likelihood of substantial and immediate irreparable injury.'" *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter*, 555 U.S. at 22.

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held. Here, Petitioners did not seek to preserve the status quo until this Court may decide a preliminary injunction, but rather to essentially decide the dispute at its inception via an ex parte TRO that mandates their immediate release. Such relief is especially disfavored. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974) (noting that TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"); *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (noting that "courts have recognized very few circumstances justifying the issuance of an ex parte TRO"); *Anderson v. United States*, 612 F.2d 1112, 1114 (1979) ("[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party").

///
///
///

B. MOOTNESS

A case is moot when the case and controversy requirement of Article III of the Constitution is not satisfied. *See Deakins v. Monaghan*, 484 U.S. 193, 199 (1988); *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548-49 (9th Cir. 1998). An action is generally moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Ruiz*, 160 F.3d at 549 (quoting *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1389 (9th Cir. 1985)). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Ruiz*, 160 F.3d at 549 (quoting *Northwest Env. Defense Center v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988)).

Through this habeas action, Petitioners sought release from ICE custody due to the COVID-19 pandemic. [*See* ECF Doc No. 1 at Prayer for Relief, para a.).] On April 4, 2020, ICE issued guidance providing for review of the custody status of detainees with medical conditions that placed them at higher risk of serious illness from COVID-19. The release of all four petitioners has rendered this case moot. "At any stage of the proceeding a case becomes moot when 'it no longer present[s] a case or controversy under Article III, § 2 of the Constitution.'" *Abdala v. I.N.S.*, 488 F.3d 1061, 1063 (9th Cir. 2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

C. PETITIONERS ARE UNLIKELY TO SUCCEED ON HABEAS CLAIMS

Petitioners' habeas petition claims that their continued detention violates their due process rights under the Fifth Amendment. [ECF No. 1 at pp. 25-26.] Apart from mootness, Petitioners failed to establish that Respondents' actions to protect them were so unreasonable that they violated their substantive due process rights under the Fifth Amendment. In confinement cases, a plaintiff must show that the precautions taken to prevent harm are "objectively unreasonable," not just that there is a potential risk. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The institution is not charged with guaranteeing no injury and no risk to detainees; instead, the state is charged with taking reasonable steps to protect those in custody. *Cf. Steading v. Thompson*, 941 F.2d 498, 499 (7th Cir. 1991) ("neither negligence nor strict liability is the appropriate inquiry in prison-

conditions cases"); *see also Dawson v. Asher*, No. C20-0409JLR-MAT, 2020 WL 1704324, at *12 (W.D. Wash. Apr. 8, 2020) ("[U]nder the Fifth Amendment, Respondents are not required to eliminate any risk to Petitioners. Instead, Respondents are required to provide for their 'reasonable safety.'") (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).

Dr. Farabaugh describes OMDC's sanitation procedures, visitation procedures, medical facility capabilities, screening procedures, testing procedures, quarantine ("cohorting") and isolation procedures, and hospital referral procedures. OMDC is following "guidance issued by the Centers for Disease Control (CDC) to safeguard those in its custody and care." [Farabaugh Declaration, para. 6; *see* Exs. 48-53 (ICE, Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan Revision I, Mar. 27, 2020) (ICE Action Plan).] The ICE Action Plan is based on CDC Guidance, which addresses testing, treatment, hospital transfers, and much more. *See* U.S. Centers for Disease Control, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Mar. 23, 2020, https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf (last visited Apr. 12, 2020) (hereinafter *CDC Interim Guidance*).

As the district court in *Sacal-Micha v. Longoria*, -- F. Supp. --, 2020 WL 1518861 (S.D.T.X. Mar. 27, 2020), found in denying the detainee's request for release based on his claimed risk of COVID-19, "Sacal presents no evidence that [the facility's] measures are insufficient or deviate materially from CDC's guidelines for institutions that detain individuals." *Id*. at *5 (citing the *CDC Interim Guidance*); *see also Verma v. Doll,* Case No. 4:20-CV-14, 2020 WL 1814149, at *6 (M.D. Penn. Apr. 9, 2020) ("There is no perfect solution to preventing the spread of COVID-19 in detention facilities, but York County Prison officials have taken reasonable steps to limit the spread throughout its facility."); *Dawson v. Asher*, No. C20-0409 JLR-MAT, 2020 WL 1304557, at *3 (W.D. Wash. Mar. 19, 2020) ("There is no evidence of an outbreak at the detention center or that Defendants'

precautionary measures are inadequate to contain such an outbreak or properly provide medical care should it occur.").

Judge Battaglia recently denied a TRO request in a similar case. *See Kydyrali v. Wolf*, Case No. 20-cv-0539 AJB AGS (S.D. Cal. Apr. 8, 2020), ECF No. 10.

Petitioners failed to establish that Respondents' actions to protect them are so unreasonable that they violate their Fifth Amendment substantive due process rights. The actions taken by Respondents in conformity with CDC guidelines demonstrate the exact opposite.

### D. PETITIONERS HAVE FAILED TO STATE IRREPARABLE HARM

Apart from mootness, Petitioners failed to show irreparable harm. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (finding irreparable harm not established by statements that "are conclusory and without sufficient support in facts").

Petitioners did not establish any specific deficiencies with their medical care at OMDC, which is managed by IHSC. Petitioners offer the declarations of doctors submitted in different cases and visitors to OMDC or Imperial, but they provide no insight into the level of medical care at OMDC or whether their risk of contracting COVD-19 is greater at OMDC than it would be if released at large.

ICE and IHSC are following CDC Guidance to protect the transmission of COVID-19 in a detained setting. The ICE Action Plan is based on CDC guidance, which addresses testing, treatment, hospital transfers, and much more.

Petitioners failed to establish deficiencies at OMDC or Imperial and therefore did not adequately show irreparable harm.

///
///
///

# III
# CONCLUSION

ICE has released all four petitioners, so this case is moot.

DATED: April 12, 2020

Respectfully submitted,

ROBERT S. BREWER JR.
United States Attorney

KATHERINE L. PARKER
Chief, Civil Division

*s/ Samuel W. Bettwy*
SAMUEL. W. BETTWY
Assistant U.S. Attorney

*s/ Caroline C. Prime*
CAROLINE C. PRIME
Assistant U.S. Attorney

REBECCA G. CHURCH
Assistant U.S. Attorney

MORGAN P. SUDER
Assistant U.S. Attorney

Attorneys for Respondents