# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISSIS YOSELIN ZELAYA SAGASTUME, et. al., | Case No. 20-cv-0658 LAB MSB |
| Plaintiffs-Petitioners, | |
| v. | **EXHIBITS** |
| GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement, et. al., | |
| Defendants-Respondents. | |

Documents relating to Petitioner Sagastume

3/16/03 Notice to Appear (NTA) — 1-2
12/12/19 Record of Deportable/Inadmissible Alien (Form I-213) — 3-7
2/24/20 Immigration Judge decision — 8-12
4/10/20 Custody review decision ($10,000 bond) — 13

Documents relating to Petitioner Benitez

6/3/19 Form I-213 — 14-17
7/17/19 NTA — 18-19
4/9/20 Custody review decision ($10,000 bond) — 20
4/10/20 Release document (Form I-830) — 21

Documents relating to Petitioner Ozdemir

5/26/19 Form I-213 — 22-25
7/15/19 NTA — 26-27
10/3/19 IJ decision — 28-37
3/23/20 Board of Immigration Appeals (BIA) decision — 38-40
4/9/20 Release document (Form I-830) — 41

Documents relating to Petitioner Jane Doe

5/26/19 I-213 — 42-44
7/15/19 NTA — 45-46
4/9/20 Release document (Form I-830) — 47

3/27/20 ICE COVID-19 Action Plan — 48-53

4/4/20 ICE Updated Guidance — 54-56

Produced 12/04/2019 from USCIS' EDMS; Alien File No. 096175814  Document 0011 of 0022,   Page 1   of 2

U.S. Department of Justice
Immigration and Naturalization Service

**Notice to Appear**

## In removal proceedings under section 240 of the Immigration and Nationality Act

File No: **A096 175 814**

Case No: _____

In the Matter of:

Respondent: **Issis Yaselin HERNANDEZ-Arguijo** _____ currently residing at:

**DALLAS TEXAS** ████

████

(Number, street, city state and ZIP code)                          (Area code and phone number)

- ☐ 1. You are an arriving alien.
- ☒ 2. You are an alien present in the United States who has not been admitted or paroled.
- ☐ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

1) You are not a citizen or national of the United States;

2) You are a native of HONDURAS and a citizen of HONDURAS;

3) You arrived in the United States at or near ROMA, TEXAS, on or about March 16, 2003;

4) You were not then admitted or paroled after inspection by an Immigration Officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

- ☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.
- ☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8 CFR 208.30(f)(2)  ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: _____
**1100 Commerce Street Suite 4B41 Dallas TEXAS US 75242**

(Complete Address of Immigration Court, Including Room Number, if any)

on **May 15, 2003** _____ at **08:30 a.m.** _____ to show why you should not be removed from the United States based on the

(Date)                    (Time)

charge(s) set forth above.

FABIAN M. CASAS
PATROL AGENT IN CHARGE
(Signature and Title of Issuing Officer)

Date: **March 16, 2003** _____

**Rio Grande City, Texas**
(City and State)

### See reverse for important information

Form I-862 (Rev. 3/22/99)N

Produced 12/04/2019 from USCIS' EDMS; Alien File No. 096175814  Document 0011 of 0022,    Page 2    of 2

## Notice to Respondent

**Warning: Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings.  You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16.  Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

_____
(Signature of Respondent)

Before:

_____          Date: _____
(Signature and Title of INS Officer)

### Certificate of Service

This Notice to Appear was served on the respondent by me on **March 16, 2003** , in the following manner and in
(Date)

compliance with section 239(a)(1)(F) of the Act:

☒  in person          ☐  by certified mail, return receipt requested          ☐  by regular mail

☐  Attached is a credible fear worksheet.

☒  Attached is a list of organizations and attorneys which provide free legal services.

The alien was provided oral notice in the **SPANISH** language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

X _____          NOE MEDRANO
(Signature of Respondent if Personally Served)          BORDER PATROL AGENT
                                                        (Signature and Title of Officer)

Form I-862 (Rev. 3/22/99)N

**U.S. Department of Homeland Security**     Subject ID :          **Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|
| HERNANDEZ-ARGUIJO, ISSIS YASELIN | | | | M | BRO | BRO | MED |

| Country of Citizenship | Passport Number and Country of Issue | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|
| HONDURAS | | 096 175 814 | | | LABORER |

| U.S. Address | | Scars and Marks |
|---|---|---|
| See Narrative | | |

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number | ☒ Single |
|---|---|---|---|
| 03/19/2003, MCI, WI - Without Inspection | | | ☐ Divorced  ☐ Married |
| | | | ☐ Widower  ☐ Separated |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| , NACAOME, HONDURAS | NCA NA |

| Date of Birth | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| Age: 38 | 12/12/2019 | SND/SND | See I-831 | 12/12/2019 08:41 |

| City, Province (State) and Country of Birth | AR ☒ | Form : (Type and No.) Lifted ☐ Not Lifted ☐ | By |
|---|---|---|---|
| VALLE, HONDURAS | | | See Narrative |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|

| Immigration Record | Criminal Record |
|---|---|
| POSITIVE - See Narrative | None Known |

| Name , Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| | None |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| HERNANDEZ-CARDENAS,    NATIONALITY: HONDURAS ... SEE INFO IN NARRATIVE | ARGUIJO-RODAS,    ... SEE INFO IN NARRATIVE |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? ☒ Yes ☐ No | Systems Checks See Narrative | Charge Code Words(s) |
|---|---|---|---|
| None Claimed | | | See Narrative |

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary | Employed from/to |
|---|---|---|---|
| Self Emp | See Narrative | Hr | |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FIN:          Left Index fingerprint          Right Index fingerprint



OTHER ALIASES KNOWN BY:
-------------------------------------
ZELAYA-SAGOSTUME, ISSIS YOSELIN
HERNANDEZ-ARGUIJO, I YASELIN

Subject Health Status
-----------------
The subject claims good health.

...(CONTINUED ON I-831)

| | P. DO2744 AMOS DO | |
|---|---|---|
| Alien has been advised of communication privileges 12/12/2019 (Date/Initials) | (Signature and Title of Immigration Officer) | |

| Distribution: | Received: (Subject and Documents)  (Report of Interview) |
|---|---|
| EARM | Officer: P. DO2744 AMOS |
| AFILE | on: December 12, 2019          (time) |
| | Disposition: Bag and Baggage |
| STAT | Examining Officer: MONTGOMERY, D 4046 |

Form I-213 (Rev. 08/01/07)

**003**

U.S. Department of Homeland Security                    Continuation Page for Form   I-213

| Alien's Name | File Number | Date |
|---|---|---|
| HERNANDEZ-ARGUIJO, ISSIS YASELIN | 096 175 814 <br> Event No: ████████ | 12/12/2019 |

Current Administrative Charges
-------------------------------
12/12/2019 - 212a6Ai - ALIEN PRESENT WITHOUT ADMISSION OR PAROLE - (PWAs)


Previous Criminal History
-------------------------------------
Subject has no criminal history

Records Checked
----------------
EARM Pos
CIS Pos
TECS Pos
IAFIS Pos
NCIC Pos
CLAIM Neg


TYPE OF EMPLOYMENT
----------------------
Operators, Fabricators, and Laborers


ARRESTING AGENTS
----------------------
J D04074 FERMA
P. D08484 AMOS

At/Near
-------------------------------------
CARLSBAD, CALIFORNIA


FATHER INFORMATION
--------------------
ADDRESS:
████████████████████, VALLE, OTHER - FOR COUNTRIES OTHER THAN US, MEXICO, AND
CANADA, HONDURAS

MOTHER INFORMATION
--------------------
NATIONALITY: HONDURAS
ADDRESS:
████████████████, VALLE, OTHER - FOR COUNTRIES OTHER THAN US, MEXICO, AND
CANADA, HONDURAS


Record of Deportable/Excludable Alien:
SUBJECT: HERNANDEZ-Arguijo, Issis
AKA: ZELAYA, Issis

| Signature | Title |
|---|---|
| P. D08484 AMOS | DO |

Form I-831 Continuation Page (Rev. 08/01/07)

004

U.S. Department of Homeland Security

**Continuation Page for Form** ___I-213___

| Alien's Name | File Number | Date |
|---|---|---|
| **HERNANDEZ-ARGUIJO, ISSIS YASELIN** | 096 175 814<br>Event No: ▮▮▮▮ | **12/12/2019** |

A096 175 814
POB/COB: HONDURAS
FBI: ▮▮▮▮▮▮

Name: HERNANDEZ-Arguijo, Issis   AKA: ZELAYA, Issis (A096 175 814)

I am a Deportation Officer with Immigration and Customs Enforcement (ICE); Enforcement and Removal Operations (ERO), assigned to the San Diego Field Office Fugitive Operations Unit. In part, this unit is responsible for locating and identifying fugitive aliens and processing them for removal proceedings in most cases when applicable under the law.

INVESTIGATION:

I am a Deportation Officer Amos with Immigration and Customs Enforcement (ICE); Enforcement and Removal Operations (ERO), assigned to the San Diego Field Office Fugitive Operations Unit. On June 25, 2019, while running routine checks, a review of ICE records indicates HERNANDEZ-Arguijo, Issis   AKA: ZELAYA, Issis  was placed in removal proceedings on February 16, 2003 with issuance of a Notice to Appear (NTA). The Notice to Appear (NTA) indicates HERNANDEZ-Arguijo, Issis   AKA: ZELAYA, Issis last entered the U.S. on February 16, 2003, at or near the Roma, Texas Port of Entry, TEXAS. HERNANDEZ-Arguijo, Issis   AKA: ZELAYA, Issis was not in possession of any legal entry documents which would allow her to enter the United States. On May 15, 2003 in Dallas, Texas an Immigration Judge ordered HERNANDEZ-Arguijo, Issis   AKA: ZELAYA, Issis (A096 175 814) to be removed in absentia from the United States. HERNANDEZ-Arguijo, Issis   AKA: ZELAYA, Issis has been a Fugitive since the order of removal was granted by the Immigration Judge.

Lead was developed by Deportation Officer (DO) J. Leano. By way of a routine records and A-file review, the Subject was identified as an Alien present in the US with an outstanding removal order issued by an immigration judge on 05/15/2003 in Dallas, Texas. A Field Operations Worksheet (FOW) was submitted and the Warrant of Arrest (i-200) was issued for the Subject at large.

ENCOUNTER:

On December 12, 2019, pursuant to an approved Fugitive Operations Field Operations Worksheet (FOW) and an Immigration Warrant of Arrest (I-200) for targeted at large fugitive HERNANDEZ-Arguijo, Issis   AKA: ZELAYA, Issis (A096 175 814) DOB: ▮▮▮▮▮▮, Immigration & Customs Enforcement (ICE) Enforcement & Removal Operations (ERO) FUGOPS SND, conducted field operations in search of the targeted alien at her known address ▮▮▮▮▮▮▮▮ Carlsbad ▮▮▮▮▮▮.

At approximately 0500 hours members of the San Diego Fugitive Operations Officer P. Amos and J. Ferma was conducting residential surveillance at address ▮▮▮▮▮▮ Carlsbad ▮▮▮▮▮, attempting to locate subject HERNANDEZ-Arguijo, Issis   AKA: ZELAYA, Issis (A096 175 814). The subjects listed FOW vehicle, Nissan Pathfinder, bearing California license plate ▮▮▮▮ was parked at the address. All Officers/Agents were displaying Police/ICE on their vest/gear.

While conducting surveillance on the residence at approximately 0700 hours a female subject that matched the description of HERNANDEZ-Arguijo, Issis   AKA: ZELAYA, Issis exited the residence located at ▮▮▮▮▮ Carlsbad ▮▮▮▮▮. The subject walked directly to the white Pathfinder and entered the vehicle.

The vehicle went mobile, officers conducted a traffic stop by activating their emergency

| Signature | Title |
|---|---|
| ▮▮▮▮▮  P. DO8484 AMOS | DO |

_____3_____ of ___5___ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security

**Continuation Page for Form** _I-213_

| Alien's Name | File Number | Date |
|---|---|---|
| HERNANDEZ-ARGUIJO, ISSIS YASELIN | 096 175 814<br>Event No: ███████ | 12/12/2019 |

lights for the vehicles driver to stop. The vehicle yielded and stopped on Camino Real and Cassia road. Officers safely approached the vehicle and identified themselves to the driver as ICE Officers. Officer Ferma and I were wearing protective vest with Police and ICE emblems when we approached the individual in the vehicle.

Officers Amos conducted a field interview with the subject in the vehicle (WHITE NISSAN PATHFINDER LICENSE PLATE: ████████ During the interview, the driver was asked her name. The individual stated that her name is ZELAYA, Issis. Officer Amos asked ZELAYA, ISSIS for identification and she surrendered a valid California driver's license bearing number ████████ with the name ZELAYA SAGUASTUME, Issis Yoselin. The photo on the identification matched the target on the FOW. HERNANDEZ-Arguijo, Issis   AKA: ZELAYA, Issis was now a fugitive due to her removal order.  Officer Ferma was present and served form I-200 Warrant of Arrest on subject. The subject was placed under arrest and subject HERNANDEZ-Arguijo, Issis   AKA: ZELAYA, Issis was taken into custody and transported to the ICE San Diego Field Office without incident.

INTERVIEW:

Subject freely admits that she is not in possession of the proper immigration documents that would allow her to enter or remain in the United States legally.  Subject is in good health and is not taking any medications.

HERNANDEZ claims her mother ARGUIJO-RODAS, ████████ was born in HONDURAS and is a citizen and National of HONDURAS. ZELAYA father HERNANDEZ-CARDENAS, ████████ was born in HONDURAS and is a citizen and National of HONDURAS.

HERNANDEZ makes no claim of United States citizenship.
HERNANDEZ was offered a free phone call.  See Detainee Free Phone Call form in Service file for details.
HERNANDEZ denied enlisting or attempting to enlist in the US armed forces.
HERNANDEZ-Arguijo, Issis AKA: ZELAYA, Issis (A096 175 814), subject was advised of her rights and the right to speak with a consular or diplomatic officer of her country. Subject acknowledged that she understood her rights and elected not to notify the Honduran consulate of her arrest in the United States by Immigration and Customs Enforcement.

The Automated Biometric Identification System (IDENT) and the Integrated Automated Fingerprint Identification System (IAFIS) were utilized to compare subject's fingerprints to those contained in these databases. The results confirmed subject's identity as HERNANDEZ-Arguijo, Issis (A096 175 814) citizen of Honduras with an outstanding removal order issued by an immigration judge.

IMMIGRATION HISTORY:

Record Checks in EARM, IDENT/ENFORCE reveal:
05/15/2003 IJ ORDER of removal

CRIMINAL HISTORY:
None Found

DISPOSITION:

HERNANDEZ was served Form I-294, Warning to Alien Ordered Removed or Deported, and her prints and photo captured on Form I-205-Warrant of Removal/Deportation.  HERNANDEZ was turned over to SND Staging and will be sent to OMDC CCA waiting for removal to Honduras.

| Signature | Title |
|---|---|
| *[signature]*  P. D08484 AMOS | DO |

_____ 4 ___ of ___ 5 ___ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**                    **Continuation Page for Form** I-213

| Alien's Name | File Number | Date |
|---|---|---|
| **HERNANDEZ-ARGUIJO, ISSIS YASELIN** | **096 175 814** | **12/12/2019** |
| | **Event No:** ▮▮▮▮▮▮ | |

***END OF NARRATIVE***

Other Identifying Numbers
--------------------------------------
ALIEN-096175814

| Signature | Title |
|---|---|
| P. DO8484 AMOS | DO |

_____ 5 _____ of _____ 5 _____ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

**007**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
DALLAS, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | IN REMOVAL PROCEEDINGS |
| | ) | |
| **HERNANDEZ-ARGUIJO, Issis Yoselin** | ) | A 096-175-814 |
| | ) | |
| RESPONDENT | ) | **DETAINED** |

**CHARGE:**   Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA or Act), as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

**APPLICATION:**   Motion to Reopen

**ON BEHALF OF RESPONDENT:**

Shannon Englert, Esq.
Attorney At Law
2292 Faraday Ave. # 100
Carlsbad, CA 92008

**ON BEHALF OF THE DEPARTMENT OF HOMELAND SECURITY:**

Paul B. Hunker III, Esq.
Chief Counsel - DHS/ICE
125 E. HWY 114, Ste. 500
Irving, TX 75062

## WRITTEN DECISION OF THE IMMIGRATION JUDGE

This matter is before the Court pursuant to Respondent's motion to reopen based on exceptional circumstances, filed on January 16, 2020. The Government has not filed a response. The Court will now deny Respondent's motion as set forth below.

### I.     Factual & Procedural History

Respondent is a native and citizen of Honduras.[1] *See* NTA. She arrived in the United States at or near Roma, Texas, on or about March 16, 2003. *Id.* She was not admitted or paroled after inspection by an immigration officer. *Id.* On March 16, 2003, the former Immigration and Naturalization Service (INS or the Government) charged Respondent with removability pursuant to § 212(a)(6)(A)(i) of the Act. *Id.* She was personally served with a NTA on the same date, as evidenced by her signature and fingerprint. *Id.* Respondent was given oral notice in the Spanish language of the necessity of complying with INA § 239(a)(1)(F) and the consequences of failing to appear as provided in INA § 240(b)(7). *Id.* The NTA provided that Respondent was ordered to appear before the Dallas Immigration Court on May 15, 2003, at 8:30 a.m. *Id.* Respondent did not appear at the hearing and was subsequently ordered removed *in absentia* on May 15, 2003, to Honduras. *See* Resp. Mot. to Reopen, Tab E.

---

[1] Also known as Issis Yoselin Zelaya Sagastume. *See* Resp. Mot. to Reopen, Tab D.

## II.     Applicable Law & Analysis

### A. Exceptional Circumstances Claim

If a respondent does not attend a scheduled removal hearing after written notice has been provided, the respondent will be ordered removed *in absentia* if the Government establishes by clear, unequivocal, and convincing evidence that written notice of the hearing was provided and that the respondent is removable. INA § 240(b)(5)(A). Adequate notice can be accomplished through personal service, or if personal service is not practicable, through service by mail to the respondent. INA § 239(a)(1). Service by mail is proper upon proof of attempted delivery to the respondent's most recently provided address. INA § 239(c).

An *in absentia* order may be rescinded upon a motion to reopen filed 180 days after an administratively final order of removal is entered if the respondent shows "exceptional circumstances" leading to her absence from the hearing. INA § 240(b)(5)(C)(i); 8 C.F.R. § 1003.23(b)(4)(iii). "Exceptional circumstances" are circumstances beyond the control of the respondent, including "battery or extreme cruelty to the respondent or any child or parent of the respondent, serious illness of the respondent, or serious illness or death of the spouse, child, or parent of the respondent, but not including less compelling circumstances." INA § 240(e)(1). This "is a difficult burden to meet." *Magdaleno de Morales v. INS*, 116 F.3d 145, 148 (5th Cir. 1997). The Court must look to the "totality of the circumstances" in deciding whether exceptional circumstances exist. *Matter of W-F-*, 21 I&N Dec. 503, 509 (BIA 1996).

At the outset, the Court finds that Respondent's motion to reopen proceedings based on exceptional circumstances is untimely. The *in absentia* order was entered on May 15, 2003. *See* Resp. Mot. to Reopen, Tab E. Respondent filed the present motion to reopen on January 16, 2020, nearly seventeen years later and well beyond the 180-day deadline. However, even if Respondent's motion was timely, the Court finds that Respondent does not assert a viable exceptional circumstance leading to her absence from the hearing which would warrant reopening.

First, Respondent asserts that at the time of her entry into the United States, she was seventeen years old, and therefore a minor, with no knowledge of the immigration process of the country and a language barrier which prevented her from understanding the consequences of failing to attend the hearing. *See also id.*, Tab D. She also claims that she suffered horrible treatment from her coyote on her way to the United States. *Id.*, Tab B. She claims that she was ████████████████████, forced to take care of a little boy with Down's Syndrome, and threatened to lie about her age, name, address in the United States, and her relationship to the boy. *Id.*

Respondent's argument as to her status as a minor is unavailing. In the case of a minor under 14 years of age, service shall be made upon the person with whom the minor resides, or shall also be made on the near relative, guardian, committee, or friend. *See* 8 C.F.R. § 103.8(c)(2)(ii). Respondent states that, at the time of her illegal entry, she was seventeen years old. *See also* Resp. Mot. to Reopen, Tab D. Even as a minor, however, Respondent was old enough to be personally served. It is undisputed that Respondent was over the age of fourteen when she was personally served with the NTA. Therefore, Respondent was adequately served with written notice of her

hearing despite being a minor at the time. *Lopez-Dubon v. Holder*, 609 F.3d 642, 646 (5th Cir. 2010) (affirming the BIA's holding that notice must be served on an adult only for aliens under 14 years of age); *Orellana-Flores v. Holder*, 410 F. App'x 821, 822–23 (5th Cir. 2011) (unpublished) (finding no due process violation where a seventeen-year-old minor was personally served with a NTA when he was detained and subsequently served via mail with a NOH); *Matter of Ponce-Hernandez*, 22 I&N Dec. 784, 785 (involving an *in absentia* order entered against a fifteen-year-old minor who was personally served with an Order to Show Cause and Notice of Hearing). As such, Respondent was reasonably expected to attend her hearing on time.

Respondent's argument that a language barrier, and emotional and psychological issues prohibited her from understanding and appreciating the significance of the NTA and her removal proceedings is equally unavailing. The INS properly served Respondent by providing the NTA via personal service. *See* NTA. Respondent acknowledged receipt of its notification as evidenced by her signature and fingerprint on the NTA. *Id.* Current law does not require that the NTA be in any language other than English. *See generally* 8 U.S.C. §1229. The NTA informed Respondent that she had been placed in removal proceedings, and it provided information regarding the nature of the proceedings, including the opportunity to seek representation, the conduct of the hearing, and the consequences of a failure to appear. *See* NTA. In addition, the Court emphasizes that Respondent was provided oral notice in the Spanish language of the necessity of complying with INA § 239(a)(1)(F) and the consequences of failing to appear as provided in INA § 240(b)(7). *Id.*

Therefore, Respondent's claim that she did not understand or appreciate the significance of this notice is unpersuasive. This is more evident in light of Respondent's statement that she sought legal advice the same year she arrived in the United States and "[n]ot one attorney she met with gave her hopes of becoming legal. She had been told by multiple attorneys that she could not do anything unless she had contact with immigration again." *See* Resp. Mot. to Reopen, at 3. As such, it appears that Respondent understood to some extent the legal aspect of the immigration process in the United States, otherwise she would not have consulted an attorney the same year she arrived in the country. Thus, the Court will deny Respondent's motion to reopen based on her status of being a minor upon entry into the United States.

A respondent's claim of ineffective assistance of counsel qualifies as an "exceptional circumstance." *See Matter of Grijalva-Barrera*, 21 I&N Dec. 472 (BIA 1996). According to *Matter of Lozada*, a motion to reopen based upon a claim of ineffective assistance of counsel requires:

(1) an affidavit by the alien setting forth the relevant facts, including the agreement with counsel regarding the alien's representation;

(2) evidence that counsel was informed of the allegations and allowed to respond, including any response; and

(3) an indication that . . . a complaint has been lodged with the relevant disciplinary authorities, or an adequate explanation for the failure to file such a complaint.

*Hernandez-Ortez v. Holder*, 741 F.3d 644, 647 (5th Cir. 2014) (citing *Matter of Lozada*, 19 I&N Dec. 637, 639 (BIA 1988)). The alien must also show that she was prejudiced by her attorney's

performance. *Id.* at 638. Ineffective assistance of counsel may only constitute grounds for the reopening of removal proceedings where the proceedings were so fundamentally unfair that the alien was prevented from reasonably presenting her case. *See id.*

Second, Respondent claims she sought counsel from a lawyer after arriving in San Diego California. *See* Resp. Mot. to Reopen, Tab B, at 4. As previously discussed, the Court finds that Respondent's motion to reopen proceedings based on ineffective assistance of counsel due to ill advisement by her prior counsel is untimely. The *in absentia* order was entered on May 15, 2003. *Id.*, Tab E. Respondent filed the present motion to reopen on January 16, 2020, nearly seventeen years later and well beyond the 180-day deadline. Even if Respondent's motion was timely, the Court notes that Respondent did not assert a viable *Lozada* claim. Respondent claims that her prior counsel told her that "there was nothing that needed to be done and that everything was fine." *Id.*, Tab B, at 4. Aside from this limited information, Respondent provides no further details to meet the elements of an effective *Lozada* claim, including evidence that prior counsel was informed of the allegations and allowed to respond, or evidence of a complaint being lodged with the relevant disciplinary authorities. Thus, the Court will deny Respondent's motion to reopen based on ineffective assistance of counsel.

Accordingly, the Court finds Respondent has not met her burden to demonstrate an exceptional circumstance and the Court declines to reopen her removal proceedings.

### B. New discretionary relief

A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation. 8 C.F.R. § 1003.23(b)(3). The evidence must be material and the alien must also show that it was unavailable and could not have been discovered or presented at the previous hearing. *Id.*; *Matter of S-Y-G-*, 24 I. & N. Dec. 247, 252 (BIA 2007).

Respondent claims she is eligible for asylum. Respondent has not established that it is more likely than not that her life or freedom would be threatened in Honduras because of her race, religion, nationality, membership in a particular social group (PSG), or political opinion. *See* INA § 241(b)(3).[2] Respondent argues that she would suffer persecution based on membership in a particular social group due to ▮▮▮▮▮▮▮▮. Respondent attached a completed Form I-589, Application for Asylum and for Withholding of Removal. In her application, she claims that she was persecuted in Honduras for ▮▮▮▮▮▮. *See* Resp. Mot. to Reopen, Tab C. Since her arrival in the United States, Respondent married ▮▮▮▮▮▮▮▮▮▮▮. *Id.*

First, Respondent did not provide all supporting documents for a withholding of removal claim such as country conditions from Honduras, particularly in relation to her PSG. *See* 8 C.F.R. § 1003.23(b)(3). Second, the Form I-213, Record of Deportable/Inadmissible Alien, does not indicate that Respondent expressed a fear of returning to Honduras despite the abuse and suffering Respondent alleges she fell victim to on account of ▮▮▮▮▮▮▮ *See* Form I-213.

---

[2] Respondent would be outside the one year filing deadline to apply for asylum because she entered the United States on or about March 16, 2003, and there is no evidence of a timely filed application. *See* NTA; *see also* 8 C.F.R. § 1208.4(a)(2).

Page 4 of 5

Presumably, Respondent would have expressed a fear of returning to Honduras upon her arrival to the United States and sought asylum immediately, especially considering Respondent's claim that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and since then has been granted asylum in the United States. *See* Resp. Mot. to Reopen, Tab C. The Court also notes that Respondent did not submit an affidavit from her sister to support her claim for asylum or withholding of removal.

Moreover, as previously stated, Respondent admits that she sought legal advice the same year she arrived in the United States. As such, the Court remains unconvinced as to why Respondent did not apply for asylum during the first year, or why she has delayed the process for nearly seventeen years. Consequently, Respondent's motion to reopen to apply for asylum and withholding of removal is denied.

### C. Sua Sponte

Finally, an immigration judge may reopen proceedings *sua sponte* in exceptional circumstances warranting the exercise of such limited discretionary authority. *See, e.g.*, *Matter of G-D-*, 22 I&N Dec. 1132, 1133-34 (BIA 1999) (*sua sponte* authority should be used "sparingly…as an extraordinary remedy reserved for truly exceptional situations"). The Court emphasizes that Respondent filed the motion to reopen nearly seventeen years after the removal order, and provided no reasonable explanation as to the delay in filing the motion to reopen. Considering the totality of the circumstances, the Court finds Respondent has not presented a truly exceptional situation that would warrant the extraordinary remedy of *sua sponte* reopening and declines to exercise its *sua sponte* authority to reopen proceedings.

Accordingly, the following order shall be entered:

### ORDER

**IT IS HEREBY ORDERED** that Respondent's Motion to Reopen is **DENIED**.

Date: Feb. 24, 2020
Dallas, Texas

James A. Nugent
Immigration Judge

**Appeal:** This decision is final unless an appeal is filed with the Board of Immigration Appeals within 30 calendar days of the date of the mailing of this written decision.

**012**

*Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
7488 Calzada De La Fuente
San Diego, CA 92154



**U.S. Immigration
and Customs
Enforcement**

APR 1 0 2020

MEMORANDUM FOR:  Alien File

FROM:  Jose Barrios
         Deportation Officer

SUBJECT: Custody Review

Below are the results of a custody review for the listed detainee:

HERNANDEZ-Arguijo, Issis Yaselin

In Reference: A096 175 814 (Honduras)

☐     Parole with no bond restriction.

☒     That you pay a bond in the amount of $10,000         .

☒     That you be subject to parole reporting requirements such as alternatives to detention (ATD), or monthly monitoring requirements.

☐     No bond; detainee(s) to remain in custody pending a decision from the immigration court

☐     Other:         _____
                                _____
                                _____

Kelley A. Beckhelm  AOIC
Assistant Officer in Charge

**013**

| U.S. Department of Homeland Security | SIGMA Event: | Subject ID : | **Record of Deportable/Inadmissible Alien** |
|---|---|---|---|

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|
| BENITEZ GARAY, Miguel Angel | | | | M | BRO | BRO | FAR |

| Country of Citizenship | Passport Number and Country of Issue | Case No | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|---|
| EL SALVADOR | | A099478102 | | ■ | ■ | |

| U.S. Address | | Scars and Marks |
|---|---|---|
| DHS CUSTODY | | |

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number | ☐ Single ☒ Married |
|---|---|---|---|
| 06/03/2019, SYS, 0941, AFOOT | TIJUANA | | ☐ Divorced ☐ Widower ☐ Separated |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| SAN MIGUEL, EL SALVADOR | ISP |

| Date of Birth | | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|---|
| Age: 43 | | 06/03/2019 | SND/SYS | SYS | 06/03/2019 1329 |

| City, Province (State) and Country of Birth | AR ☒ | Form (Type and No.) Lifted ☐ Not Lifted ☐ | By |
|---|---|---|---|
| SAN MIGUEL, N/A, EL SALVADOR | | | MARIANA BERNARDO |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| None | None | No Documents | TRAVEL/SEEKING |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| None | None | AT ENTRY |

| Immigration Record | Criminal Record |
|---|---|
| NEGATIVE - See Narrative | None Known |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| BENITEZ GARAY, , NATIONALITY: EL SALVADOR | 0 |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| BENITEZ, NATIONALITY: EL SALVADOR | GARAY, NATIONALITY: EL SALVADOR |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? ☒ Yes ☐ No | Systems Checks See Narrative | Charge Code Words(s) |
|---|---|---|---|
| None Claimed | | | I7A1 |

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary | Employed from/to |
|---|---|---|---|
| | | Hr | |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FINS:

Left Index fingerprint          Right Index fingerprint

RECORDS CHECKED
----------------
APIS Pos
ATS-P Pos
CCD Pos
CLAIM Pos
EARM Pos
...(CONTINUED ON I-831)

| Alien has been advised of communication privileges MB 6/4/19 | MARIANA BERNARDO CBP OFFICER | |
|---|---|---|
| | (Date/Initials) | (Signature and Title of Immigration Officer) |

| Distribution: | Received (Subject and Documents) (Report of Interview) |
|---|---|
| | Officer MARIANA BERNARDO |
| | on June 3, 2019 (time) |
| | Disposition Expedited Removal with Credible Fear |
| | Examining Officer |

Form I-213 (Rev. 08/01/07)

**014**

U.S. Department of Homeland Security

Continuation Page for Form __I213__

| Alien's Name<br>BENITEZ GARAY, Miguel Angel | File Number A099478102<br>SIGMA Event:<br>Event No: | Date<br>06/03/2019 |
|---|---|---|

IAFIS Pos
NCIC Neg
TECS Pos

SECTION CODES
-------------
212a7AiI


On June 3, 2018 at approximately 0941 hours, Miguel Angel BENITEZ GARAY (DOB                )
applied for admission into the United States from Mexico through the San Ysidro Port Of
Entry pedestrian primary lanes. BENITEZ GARAY presented his National Identification Card
from El Salvador to Customs and Border Protection Officer (CBPO) Tabucbuc. BENITEZ GARAY did
not have legal documents to enter, live, or work in the United States. CBPO Tabucbuc
conducted computer queries on BENITEZ GARAY and received a computer generated alert. BENITEZ
GARAY was referred to the Admissibility Enforcement Unit (AEU) for further processing.

On June 3, 2019 at approximately 2300 hours, CBPO Bernardo conducted an interview with
BENITEZ GARAY during his interview in AEU he was alert, responsive and appeared capable of
communicating. The main complaint BENITEZ GARAY had was pain. He said he felt pain all over
his body and on his back. BENITIEZ GARAY said he was diagnosed with Leukemia and cancer was
detected in his blood. BENITEZ GARAY assured officers his condition would not interfere with
his interview. During the sworn statement he gave his statements freely and voluntarily.
During his interview BENITEZ GARAY made the following statements: BENITEZ GARAY stated he
wanted the interview to be conducted in Spanish.

BENITEZ GARAY said he is a citizen and native of El Salvador. He was born in the city of San
Miguel in the country of El Salvador. His complete name and date of birth is Miguel Angel
BENITEZ GARAY and was born in                    . When he was a gang member his friends
nicknamed him, "Travieso."

BENITEZ GARAY stated both his parents were born in El Salvador and are citizens of El
Salvador. His father's name is               Benitez       and his mother's name is
         Garay. His father passed away in 1992, but his mother is a legal permanent resident
of the United States living in Houston, Texas. BENITEZ GARAY said his mother lives with one
of his brothers and helps him babysit his brother's children. BENITEZ GARAY said he is the
youngest brother from both siblings. His oldest brother is named                    e Garay (DOB
      ) (U.S. PP#         )(FBI #6        ). His second brother is named
Garay (DOB          )(PP#          ). Both of his siblings were born in El Salvador, but
both immigrated to the United States and are now Naturalized citizens.

BENITEZ GARAY said he is still legally married, but he is separated. His wife's name is
         . BENITEZ GARAY (DOB          ) (PP#          ).          works at a clinic
collecting payments for autistic children. Together he and         have one child named
         Benitez Ortiz (DOB          ). BENITEZ GARAY says he has three other children
who live in El Salvador with their mothers:               Benitez Orantes (DOB
      ),               Benitez Mendieta (DOB          ), and
Benitez Mendieta (DOB          ). The other two women BENITEZ GARAY had children with are
     Orantes and          Mendieta (DOB          ). They are both citizens of El
Salvador.

...(CONTINUED ON NEXT PAGE)

| Signature                        MARIANA BERNARDO | Title            CBP OFFICER |
|---|---|

Form I-831 Continuation Page (Rev. 08/01/07)

**015**

**U.S. Department of Homeland Security**                     **Continuation Page for Form** I213

| Alien's Name | File Number A099478102 | Date |
|---|---|---|
| BENITEZ GARAY, Miguel Angel | SIGMA Event: ▮▮▮ | 06/03/2019 |
| | Event No: ▮ | |

BENITEZ GARAY said he was born in San Miguel, El Salvador and lived there until 2000. He traveled with a "coyote" (smuggler) and entered the United States illegally. Upon entry he went to live in Austin, Texas. BENITEZ GARAY remained in Austin for fifteen years until he was arrested for trespassing and was deported to El Salvador on July 7, 2015. BENITEZ GARAY lived in El Salvador for two months, address Colonia Milagro De La Paz San Miguel with his uncle named ▮▮▮▮▮▮▮ Bran. In September 2015, BENITEZ GARAY went to live in Districto Federal, Mexico in Mendivile Col Daniel Garza and lived with his niece, named ▮▮▮ Garay. On June 21, 2016 he illegally crossed into the United States with another smuggler and went to live in San Antonio at home address ▮▮▮▮▮▮▮▮, San Antonio, Texas. On March 30, 2017 he was arrested and detained in Bexar County, San Antonio and Pearsall Detention Center, in Texas. On November 17, 2017 he was released and lived in George Town, Texas. On May 9, 2018 he was deported to El Salvador. He went to live with ▮▮▮▮▮▮▮ Benitez Mendieta at home address Col Santa Isabel, El Rosario La Paz. He stayed with them for three months and went to Chipas, Mexico in July 30, 2018. In Mexico he mostly stayed in hotels and traveled to Tijuana, Mexico on September 19, 2019. Before the interview he told CBPO Bernardo he spoke to his attorney and was advised to apply for entry and conduct a credible fear interview at the border, which is why he traveled to the San Ysidro Port of Entry.

BENITEZ GARAY said he has a fear and cannot continue to live in El Salvador. He claimed the situation in El Salvador was dangerous for a person like him.

BENITEZ GARAY stated he did not have petitions pending with Citizenship and Immigration Services at this time. BENITEZ GARAY states he has never applied for a U.S. visa. He admits to have illegally entered and lived in the United States. BENITEZ GARAY states he has been deported from the United States twice. BENITEZ GARAY was previously issued A# 099-478-102 and FBI# ▮▮▮▮▮▮▮. His criminal record reveals he was previously arrested for trespassing, obstruction or retaliation, and possession of 1 gram of crack. BENITEZ GARAY was only convicted of obstruction and trespassing and the case of drug possession was dismissed.

BENITEZ GARAY said he used to work as a security guard for his church and was trained with a caliber 38 revolver. He was also exposed to guns at a young age because his uncle and cousins were in the military in El Salvador and he shot a 38 revolver with them. BENITEZ GARAY says he was in the military in El Salvador for three out of six months and never completed his training. His uncle and mother produced a letter and he was released from his military obligation.

BENITEZ GARAY stated he has relatives that live in the United States and gave his brother, ▮▮▮ Garay's point of contact as phone number ▮▮▮ ▮▮▮▮▮ with home address ▮▮▮▮ ▮▮▮ Cypress Texas ▮▮▮. BENITEZ also gave officers his brother, ▮▮▮ Garay's point of contact as ▮▮▮▮. BENITEZ GARAY said he intends to stay at ▮▮▮▮'s home and live with his mother and brother.
...(CONTINUED ON NEXT PAGE)

| Signature | Title |
|---|---|
| MARIANA BERNARDO | CBP OFFICER |

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**                    **Continuation Page for Form** __I213_____

| Alien's Name BENITEZ GARAY, Miguel Angel | File Number A099478102 SIGMA Event: ▮▮▮▮▮ Event No: ▮▮▮▮▮ | Date 06/03/2019 |
|---|---|---|

BENITEZ GARAY said ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

BENITEZ GARAY stated he understood he is going to be held in the custody of the Department
of Homeland Security until a decision was made on his case. BENITEZ GARAY was provided with
a list of free legal services for the State of California, but said he already has a lawyer
by the name of ▮▮▮▮▮▮▮▮▮▮. As a point of contact for his lawyer BENITEZ GARAY
provided phone number ▮▮▮▮▮▮ and email address ▮▮▮▮▮▮▮▮▮

DISPOSITION: BENITEZ GARAY is inadmissible to the United States pursuant to section
212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, as amended. BENITEZ GARAY was
served with an M-444 (Information About Credible Fear) pending an interview with a credible
fear officer.

| Signature                        MARIANA BERNARDO | Title              CBP OFFICER |
|---|---|

Form I-831 Continuation Page (Rev. 08/01/07)

**017**

DEPARTMENT OF HOMELAND SECURITY

**FILE COPY**

## NOTICE TO APPEAR

| In removal proceedings under section 240 of the Immigration and Nationality Act: |
|---|

File No. __A099478102__

In the Matter of:

Respondent: __MIGUEL A. BENITEZ GARAY__ _____ currently residing at:

__c/o DHS Otay Mesa Detention Center 7488 Calzada de la Fuente, San Diego, CA 92154__

(Number, street, city and ZIP code) — 619-661-4071

(Area code and phone number)

[x] You are an arriving alien.
[ ] You are an alien present in the United States who has not been admitted or paroled.
[ ] You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that:

1) You are not a citizen or national of the United States.

2) You are a native of El Salvador and a citizen of El Salvador.

3) You applied for admission at the San Ysidro, CA Port of Entry on or about 6/3/2019.

4) You did not then possess or present a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

JUL 17 2019

OTAY MESA (OTM)
IMMIGRATION COURT

[x] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

[ ] Section 235(b)(1) order was vacated pursuant to:   [ ] 8CFR 208.30   [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

EOIR, Site to be Determined in San Diego

TBD _(Complete Address of Immigration Court, including Room Number, if any)_

on __TBD__ at _____ to show why you should not be removed from the United States based on the
        (Date)          (Time)

charge(s) set forth above.

_Randy & Allaho, SDDO_

(Signature and Title of Issuing Officer)

Date __JUL 16 2019__   San Diego, CA

(City and State)

DHS Form I-862 (5/17)    See reverse for important information    Page 1 of 2

**018**

**Notice to Respondent**

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the Department of Homeland Security immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United Stated and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act (the Act).

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855)448-6903.

---

**Request for Prompt Hearing**

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____    _____
                                                            *(Signature of Respondent)*

                                                            Date: _____

_____
*(Signature and Title of Immigration Officer)*

---

**Certificate of Service**

This Notice To Appear was served on the respondent by me on ___JUL 1 6 2019___, in the following manner and in compliance with section 239(a)(1) of the Act.

☑ In person   ☐ by certified mail, returned receipt # _____   requested   ☐ by regular mail
☑ Attached is a credible fear worksheet.
☑ Attached is a list of organization and attomeys which provide free legal services.

The alien was provided oral notice in the SPANISH language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____▉▉▉▉▉_____          _____
                *(Personally Served)*                      *(Signature and Title of Officer)*

DHS Form I-862 (5/17)                                                                 Page 2 of 2

**019**



*Enforcement and Removal Operations*
**U.S. Department of Homeland Security**
7488 Calzada De La Fuente
San Diego, CA 92154

**U.S. Immigration
and Customs
Enforcement**

APR 0 9 2020

MEMORANDUM FOR:  Alien File

FROM:  Patricia Vargas
Deportation Officer

SUBJECT: Custody Review

Below are the results of a custody review for the listed detainee:

BENITEZ Garay, Miguel Angel

In Reference: A099 478 102 (El Salvador)

☐     Parole with no bond restriction.

☒     That you pay a bond in the amount of $ 10,000 .

☒     That you be subject to parole reporting requirements such as alternatives to detention (ATD), or
monthly monitoring requirements.

☐     No bond; detainee(s) to remain in custody pending a decision from the immigration court

☐     Other:  _____
            _____
            _____

Kelley A. Beckhelm
Assistant Officer in Charge
Otay Mesa Detention Center

**020**

**U.S. Department of Homeland Security**
U. S. Immigration and Customs Enforcement

**Notice to EOIR: Alien Address**

| Date: | 4/10/2020 | File No: | A099 478 102 |

To: Office of the Immigration Judge
Executive Office for Immigration Review
7488 Calzada de la Fuente
San Diego, CA 92154    PH: 619-661-5600

From: Office of the Field Director
U. S. Immigration and Customs Enforcement
880 Front Street, Room 2242
San Diego, CA 92101    PH: 619-436-0620

Respondent:    BENITEZ Garay, Miguel Angel

---

**This is to notify you that this respondent is:**
☐ Currently incarcerated by other than ICE. A charging document has been served on the respondent, and an Immigration Detainer-Notice of Action by the ICE (Form I-247) has been filed with the institution shown below. He/she is incarcerated at:

His/her anticipated release date is:

☐ Currently detained by ICE at:

☐ Currently detained by ICE and transferred this date to a new location:

**ICE Motion for Change of Venue attached. ☐ Yes ☒ NO**

☒ Released from ICE custody on the following condition(s):
    ☐ Personal Recognizance
    ☐ Order of Recognizance (Form I-240A)
    ☒ Bond in the amount of $    10,000.00    ☐ Surety bond   ☒ Cash bond
    ☒ Other   **ATD IS A CONDITION OF RELEASE**

☒ Upon release from ICE custody, the respondent reported his/her address and telephone number will be:

████
Austin, TX ████
■ PH: ████

☒ Upon release from ICE custody, the respondent was reminded of the requirements contained in Section 239 (a)(1)(F)(ii) of the Immigration and Nationality Act and was provided with an EOIR change of address form (EOIR-33).

| _____ | Deportation Officer |
| Signature-ICE Officer | Title-ICE Officer |
| M. Hendricks/DO | San Diego, CA |
| Printed Name of ICE Officer | Location |

Form I-830 (Rev. 4/1/97)N

**021**

| U.S. Department of Homeland Security | Subject ID : ▓▓▓▓▓▓▓ | Record of Deportable/Inadmissible Alien |
|---|---|---|

| Family Name (CAPS) | First | Middle |
|---|---|---|
| OZDEMIR, YUSUF | | |

| Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|
| M | | | MBR |

| Height | Weight | Occupation |
|---|---|---|
| ▓ | | |

| Country of Citizenship | Passport Number and Country of Issue | File Number |
|---|---|---|
| TURKEY | ▓▓▓▓▓▓▓ | 201 683 167 |

Scars and Marks

**U.S. Address**
▓▓▓▓▓▓▓ San Diego, CALIFORNIA, ▓▓▓▓

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at |
|---|---|
| 05/23/2019 15:43, CAL, FOOT | See Narrative |

| F.B.I Number | |
|---|---|
| ▓▓▓▓▓▓ | ☒ Single ☐ Divorced ☐ Married ☐ Widower ☐ Separated |

Number, Street, City, Province (State) and Country of Permanent Residence

Method of Location/Apprehension
ISP NA

| Date of Birth | Age: 48 |
|---|---|
| ▓▓▓▓▓ | |

| Date of Action | Location Code |
|---|---|
| 05/26/2019 | CAL/SND |

| At/Near | Date/Hour |
|---|---|
| CAL | 05/23/2019 13:19 |

| City, Province (State) and Country of Birth | AR ☒ | Form : (Type and No.) Lifted ☐ Not Lifted ☐ |
|---|---|---|
| YESILYURT, TURKEY | | |

By

| NIV Issuing Post and NIV Number | Social Security Account Name |
|---|---|
| | |

| Status at Entry | Status When Found |
|---|---|
| | |

| Date Visa Issued | Social Security Number |
|---|---|
| | |

Length of Time Illegally in U.S.

| Immigration Record | Criminal Record |
|---|---|
| NEGATIVE | None Known |

| Name , Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| | None |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| | |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? ☒ Yes ☐ No | Systems Checks See Narrative | Charge Code Words(s) See Narrative |
|---|---|---|---|
| None Claimed | | | |

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary | Employed from/to |
|---|---|---|---|
| | | Hr | |

Narrative (Outline particulars under which alien was located/apprehended.  Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation.  Indicate means and route of travel to interior.)

FIN: ▓▓▓▓▓▓

| Left Index fingerprint | Right Index fingerprint |
|---|---|

Subject Health Status
----------------

Current Criminal Charges
------------------------
05/23/2019 - 8 USC 1182 - ALIEN INADMISSIBILITY UNDER SECTION 212

Current Administrative Charges

...(CONTINUED ON I-831)

KARLOMARIO ROMERO
CBP Officer
(Signature and Title of Immigration Officer)

Alien has been advised of communication privileges _____ (Date/Initials)

| Distribution: | Received: (Subject and Documents) (Report of Interview) |
|---|---|
| ALIEN | Officer: KARLOMARIO ROMERO |
| | on: May 26, 2019 _____ (time) |
| A-FILE | Disposition: Expedited Removal with Credible Fear |
| | Examining Officer: JOSE CORONADO |

Form I-213 (Rev. 08/01/07)

**022**

U.S. Department of Homeland Security                 Continuation Page for Form _I-213_____

| Alien's Name | File Number | Date |
|---|---|---|
| **OZDEMIR, YUSUF** | **201 683 167**<br>**Event No:** ███████ | **05/26/2019** |

```
-------------------------------
05/23/2019 - 212a7AiI - IMMIGRANT WITHOUT AN IMMIGRANT VISA


Previous Criminal History
-------------------------------------
Subject has no criminal history

BOARDED AT
---------------------
CALEXICO


Records Checked
----------------
ATS-P Neg
CIS Neg
CLAIM Neg
CCD Neg
EARM Neg
NCIC Neg
TECS Neg


SECTION CODES
------------
904

null:
```
On 05/23/2019, at approximately 1315 hrs. Yusuf OZDEMIR, with DOB: ███████, was escorted by Mexican Immigration BETA Group to the Calexico West Port of Entry pedestrian primary lanes.  OZDEMIR presented Russian Passport #███████ to U.S Customs and Border Protection primary Officer (CBPO) Hernandez and requested asylum. CBPO Hernandez referred OZDEMIR to the pedestrian secondary office for further inspection.

In the pedestrian secondary office, OZDEMIR was escorted to a secure and private cell, where a pat down was conducted by CBPO Gomez Huerta, witnessed by CBPO Lopez, A, and authorized by SCBPO Hernandez.  The patdown yielded negative results. OZDEMIR was thereafter turned over to the Admissibility Enforcement Unit (AEU) for further processing.

In the AEU, OZDEMIR was interviewed by CBPO Romero. OZDEMIR stated to be comfortable understanding the Turkish language and was willing to answer any questions in a free and truthful manner.  The Compass Language Services were employed for interpretation and interpreter 351357 was utilized for interview.

OZDEMIR stated he is a citizen of Turkey, born in the city of Malatya, Turkey. OZDEMIR claims to have no other citizenships and possesses no documents to reside or work in any other country.  OZDEMIR stated he has resided in Turkey for the entirety of his life and claims to have a 5th grade education.  OZDEMIR stated he worked as a commercial cleaner for 25 years at the Rora Company in Turkey.  OZDEMIR has no visa applications with the Department of State or the Department of Homeland Security, and OZDEMIR has no prior U.S arrests or apprehensions.  OZDEMIR claims he cannot remember his Turkish phone numbers and claimed his address is as follows: - ███████

| Signature | Title |
|---|---|
| KARLOMARIO ROMERO | CBP Officer |

Form I-831 Continuation Page (Rev. 08/01/07)

**023**

U.S. Department of Homeland Security                    Continuation Page for Form   I-213
_____

| Alien's Name | File Number | Date |
|---|---|---|
| **OZDEMIR, YUSUF** | 201 683 167<br>Event No: | 05/26/2019 |

███████ Istanbul, Turkey.

OZDEMIRs family is identified as follows:
Father: ██████ Ozdemir. He is 60 years old. He is a Turkish citizen.  He worked as a laborer, however he is deceased.  He died of a heart attack 4 years ago.
Mother: █████ Ozdemir.  She is 60 years old.  She is a Turkish citizen and was a housewife. She is currently in Turkey.
Brother: ████████ Ozdemir. He is 40 years old.  He has a laundry shop.
Sister: ██████ Ozdemir. She is 38 years old.  She is a Security Guard for the city of Istanbul, Turkey.  She guards the gate to a city municipal building.
Partner: ████████████. DOB: ████████

OZDEMIR stated he is not experiencing any persecution from any Government, military group or religious organization from around the world.  Contrarily, OZDEMIR claims its ████████ ███████. OZDEMIR stated he learned him and his partner, ████████████, contracted HIV in 2016 and was subsequently ostracized from his family.  OZDEMIR claims his family and neighbors told him ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ OZDEMIR said he moved into his partners home, in the Republic of Chechnya, however experienced problems there as well.  OZDEMIR feels, because ████████████████████████████████████████

OZDEMIR claims he suffered from a brain injury after learning he had HIV ████████████████ therefore, OZDEMIR set forth a disclaimer stating he may not have his travel dates and facts straight.  OZDEMIR claims he departed Istanbul, Turkey on May 19, 2019 with his partner, ████████████. He flew from Istanbul, Turkey to Amsterdam, Netherlands and transited onto Mexico City, Mexico.  OZDEMIR claims he missed his flight in Mexico City, therefore he stayed one night at the airport and flew onto Mexicali, Mexico on May 20, 2019.  OZDEMIR claims he stayed at two unknown hotels in Mexicali until he presented himself to the Calexico POE for processing.

OZDEMIR claims he has no U.S Sponsor or U.S point of contact.  OZDEMIR stated he has no association, link, or ties to any terrorist group and has never participated, sponsored, forced, or been involved with any terrorist organization or terrorist affiliated persons.

OZDEMIR stated he is afraid to return to his country of birth based on ████████████ ████████████████████. OZDEMIR acknowledged he has no legal right to United States residency or citizenship.

DISPOSITION: OZDEMIR, Yusuf, is inadmissible to the United States pursuant to section 212(a)(7)(A)(i)(I)-Immigrant Without Documents of the Immigration and Nationality Act (INA) as amended. Forms I-860 and I-296 were executed and served to await an interview with an asylum officer. OZDEMIR will be turned over to Immigration and Customs Enforcement pending the asylum officer interview.


Other Identifying Numbers
--------------------------------------
ALIEN-201683167

| Signature | Title |
|---|---|
| KARLOMARIO ROMERO | CBP Officer |

Form I-831 Continuation Page (Rev. 08/01/07)

**024**

**U.S. Department of Homeland Security**

**Continuation Page for Form** I-213

| Alien's Name | File Number | Date |
|---|---|---|
| **OZDEMIR, YUSUF** | **201 683 167** | **05/26/2019** |
| | **Event No:** ███████ | |

Cedula (Foreign ID)-████████   Turkey

| Signature | Title |
|---|---|
| KARLOMARIO ROMERO | CBP Officer |

<u>    4    </u> of <u>    4    </u> Pages

Form I-831 Continuation Page (Rev. 08/01/07)

**025**

DEPARTMENT OF HOMELAND SECURITY

## NOTICE TO APPEAR

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

File No: 201 683 167

In the Matter of:

Respondent: _____ OZDEMIR, Yusuf _____ currently residing at:

c/o DHS MTC, IRDF, 1572 Gateway Road, Calexico, CA 92231     +1 (760) 618-7200
(Number, street, city and ZIP code)          (Area code and phone number)

[X] You are an arriving alien.

[ ] You are an alien present in the United States who has not been admitted or paroled.

[ ] You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of TURKEY and citizen of TURKEY;

3. You applied for admission into the United States at the CALEXICO, California Port of Entry on or about May 23, 2019;

4. You did not then possess or present a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document as required by the Immigration and Nationality Act.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

[X] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

[ ] Section 235(b)(1) order was vacated pursuant to:      [ ] 8CFR 208.30     [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

EOIR - Imperial, 1572 Gateway Rd., Calexico, CA 92231
(Complete Address of Immigration Court, including Room Number, if any)

on _____TBD_____ at _____TBD_____ to show why you should not be removed from the United States based on the
(Date)          (Time)

G. PACHECO, SDDO
2922

charge(s) set forth above.
(Signature and Title of Issuing Officer)

Date: 07/11/2019 _____     Calexico, CA
(City and State)

DHS Form I-862 (5/11)        **See reverse for important information**        Page 1 of 2

**026**

### Notice to Respondent

**Warning: Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the Department of Homeland Security immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act (the Act).

### Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____
*(Signature of Respondent)*

Date: _____

_____
*(Signature and Title of Immigration Officer)*

### Certificate of Service

This Notice To Appear was served on the respondent by me on __07/12/2019__ , in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person   [ ] by certified mail, returned receipt # _____ requested   [ ] by regular mail

[X] Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the _____TURKISH_____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____
*(Signature of Respondent if Personally Served)*

_____  Deportation Officer
*(Signature and Title of officer)*

**027**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
IMPERIAL, CALIFORNIA

File:  A201-683-167                                          October 3, 2019

In the Matter of

|  |  |  |
|---|---|---|
| | ) | |
| YUSUF OZDEMIR | ) | IN REMOVAL PROCEEDINGS |
| | ) | |
| RESPONDENT | ) | |

CHARGES:        Section 212(a)(7)(A)(ii) of the Immigration and Nationality Act, that
                the immigrant, at the time of application for admission, was found
                not in possession of a valid, unexpired immigrant visa, re-entry
                permit, border crossing card, or other valid entry document required
                by the Act, and a valid, unexpired passport or other suitable travel
                document or document of identity and nationality, as required under
                the regulations issued by the Attorney General.

APPLICATIONS:   I-589 application for asylum, withholding of removal, and relief
                under the Convention Against Torture.

ON BEHALF OF RESPONDENT:  Pro se

ON BEHALF OF DHS:  Tracy Klein

ORAL DECISION OF THE IMMIGRATION JUDGE

Respondent is a native and citizen of Turkey who entered the United

States on or about May 23rd, 2019 by presenting himself at the Calexico, California port

of entry.  Respondent was placed into removal proceedings by the filing of the Notice to

Appear on July 15, 2015.  See Exhibit 1, so that 1 also includes the credible fear

**028**

interview and the border interview. Upon receipt of the Notice to Appear, the court issued a notice of first court date. See Exhibit 2. On August 8, 2019, respondent filed his asylum application along with some documents in support, which consisted primarily of medical documents and some identity documents for himself and his domestic partner. These are included, all collected as Exhibit 3. On September 6, 2019, the Department of Homeland Security filed its pre-hearing submission, which included country conditions reports for Turkey. See Exhibit 4. The court has also considered the sworn testimony of the respondent today in court.

STATEMENT OF THE LAW

The burden of proof is on the respondent to establish that he is eligible for asylum or withholding of removal under Section 241(b)(3) of the Act, or relief under the United Nations Convention Against Torture. The provisions of the REAL ID Act of 2005 apply to the respondent's application.

To qualify for withholding of removal under Section 241(b)(3) of the Act, the respondent's facts must show past persecution or a clear probability that his life or freedom would be threatened in the country directed for removal because of his race, religion, nationality, membership in a particular social group, or political opinion.

To qualify for asylum under Section 208 of the Act, the respondent must show that he is a refugee within the meaning of Section 101(a)(42). The definition of refugee includes a requirement that the respondent demonstrate either that he suffered past persecution or that he has a well-founded fear of future persecution in his country of nationality, on account of one of the five statutory grounds. The REAL ID Act specifies that the application must establish that one of the five ground was, or will be, at least one central reason for persecuting the applicant. To establish a well-founded fear of future persecution, the applicant must show (1) that he has a subjective fear of

persecution, and (2) that the fear has an objective basis. The well-founded fear standard required for asylum is more generous than the clear probability standard for withholding of removal. Finally, an applicant must demonstrate that asylum is warranted in the exercise of discretion.

An applicant for withholding of removal under the United Nations Conviction Against Torture bears the burden of proving that it is more likely than not that he would be tortured, as defined in the regulations if removed to the proposed country of removal. The torture must be inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity. Acquiescence requires that the public official have prior awareness of the activity and thereafter breach his or her legal responsibility to intervene to prevent such activity.

The court has applied the REAL ID Act requirements with respect to sustaining burden and determining credibility.

Persecution is harm, or harm threatened on account of a belief or trait held by or imputed to an alien, and the belief or trait must be protected under one of the five statutory grounds.

On page 5 of the respondent's application for asylum, he checks the box for a particular social group. While he has not designated a particular social group, the court has considered his testimony in the context of his particular social society, and also in light of the Board of Immigration Appeals cases Matter of M-E-V-G-, 26 I&N Dec. 227 (BIA 2014) and Matter of W-G-R-, 26 I&N Dec. 208 (BIA 2014). According to the respondent's testimony, the court is assuming that his particular social group would be ████████████████████████████████████

Upon careful consideration of all the facts of the record, individually and cumulatively, the court makes the following determinations.

A201-683-167                    3                    October 3, 2019

**030**

## CREDIBILITY

The REAL ID Act of 2005 applies and thus, the court may, after considering the totality of the evidence and all relevant factors, base a credibility determination on the demeanor, candor, responsiveness of the applicant or witness, the inherent plausibility of the account, the consistency between oral and written statements, the internal consistency of such statements, consistency of such statements with other evidence in the record, and any inaccuracy or falsehood in such statements, or any other factor.

Regardless of whether an applicant is deemed credible, he has the burden to corroborate the material elements of the claim where the evidence is reasonably obtainable without advance notice from the court. In general, the weaker the applicant's testimony, the greater the need for corroborating evidence.

In this case, there were problems with the respondent's testimony. He has largely attributed those problems to the concussion that he maintains he sustained ███████ ███████████. He had great difficulty remembering dates or sequences of events. He was non-responsive to several questions in that he did not answer the specific question asked him by the court or by the government. But the court has tried to do all of that through the assumption that the respondent does have some difficulty with his memory because of his concussion in 2018 and due to the respondent being visibly emotional and, the court assumes, under some stress during the trial itself. The court is not going to find that the respondent has a negative credibility finding, but the court will take the respondent's testimony with the weight it deserves and would note that there are some inconsistencies within the testimony that make it weaker than it might have been.

## RESPONDENT'S TESTIMONY

According to the respondent, in 2017, ███████████████████████ ████████████████████████████ a blood test was done, it revealed that he was HIV-positive. ██████████████████████████████████████

███████████████████████████ His credible fear interview was a little confusing as to whether or not ██████████████████████████████████

████████ But regardless of that, it apparently all occurred at some point in 2017.

████████████████████████████████████████████

███████████████████

Respondent testified that perhaps one or two weeks -- at one point he said two or three weeks -- ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████ ████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████ At one point, he said that this would've been in the 10th, 11th, or 12th month of the year, which would've been October, November, or December.  Respondent attributed his lack of specificity to a head injury he'd sustained later in 2018.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

A201-683-167                         5                    October 3, 2019



**033**

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████.

　████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████

　█████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

On cross-examination, ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

Respondent did testify, although there were no details whatsoever, that his partner had had her own encounters, ███████████████████████

████████████████████████████████████

## ANALYSIS

It is respondent's burden to establish that he is entitled to asylum based on persecution on a protected basis. Persecution is harm or harm threatened on account of a belief or trait held by or -- I'm sorry -- or imputed to the alien, and the belief or trait must be protected under one of the five grounds. While the country conditions reports do indicate that many people do suffer persecution in Turkey, the court's looking specifically at the language in Exhibit 4 with regard to individuals with HIV status. There is a paragraph on that on pages 75 and 76 of the report that states, "Many persons with HIV/AIDS reported discrimination, access to employment, housing, public services and health care. The Cost of Living Association noted that the country lacked laws protecting persons with HIV/AIDS from discrimination and that there were legal obstacles to anonymous HIV testing. Due to pervasive social stigma against persons with HIV/AIDS, many individuals feared the results of HIV tests would be used against them and avoided testing. Whereas the rest of the country conditions reports reflect specific attacks and persecution of individuals based on other kinds of status, there's nothing in the country conditions reports that indicates that HIV-positive individuals have been attacked or persecuted on that basis. Further compounding the problem is that the respondent never reported to the authorities or sought the protection of the authorities ████████████████████. So, it's unknown whether or not the police or other authorities in Turkey could have assisted respondent ███████████████. As the government has noted, this is underscored by the fact that when respondent

**035**

relocated outside of the neighborhood that he traditionally lived in, he did not report any encounters at that point.

       With regard to the respondent's and his partner's travels to Chechnya and other countries, and the sale of the property in Chechnya to fund a trip to the United States, the court agrees with the government that it does look like that was a strategy to seek medical care predominantly, rather than an actual asylum claim. The claim of the respondent's partner is not in front of the court, so I don't know what her facts that she alleges were, but the court finds respondent has not carried his burden based on that and the fact that he did not seek assistance from the authorities at all and was able to safely live in other areas to address his problem. I don't find that it amounts to persecution, given the apparently complete lack of government actors in these proceedings. The court has also considered whether or not anything would amount to torture and because there's no government action involved in that regard, finds that respondent has not carried his burden on the Convention, either. I'll note that he did not check the box for the Convention on his application, but the court has considered whether he might be eligible.

       The court does find respondent is a member of a particular social group of ███████████████████████████, but does not find that he's carried his burden to establish that such persons are persecuted. While they may suffer discrimination, there's no evidence of persecution and there's not sufficient evidence that he was persecuted by anyone that the authorities could not control or that the authorities are, in any way, complicit in such persecution. Therefore, respondent has not carried his burden to establish a well-founded fear of future persecution on a protected basis. While he has a subjective fear, and the court believes respondent is under stress and does not wish to return to Turkey, the court finds that his fear does not have an

objective basis, at least not in the record that's been provided by the respondent.

Therefore, the respondents applications are going to be denied.

ORDERS

Respondent's applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture are denied.

Respondent is ordered removed from the United States to Turkey.

The respondent has reserved appeal of this decision, and will be given an appeal packet to be.  His appeal in front of the Board of Immigration Appeals is due November 4th, 2019.

The above is an oral decision delivered in open court immediately following a trial on the merits, and should not be confused in form or format with a written decision the court might craft.  The decision has been faithfully and dutifully translated into the Turkish language by the court's Turkish-language interpreter, although that language will not appear in the transcript.


BARCUS, E. MARK
Immigration Judge

037

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A201-683-167 – Imperial, CA

Date:   **MAR 2 3 2020**

In re: Yusuf OZDEMIR

IN REMOVAL PROCEEDINGS

APPEAL AND MOTION

ON BEHALF OF RESPONDENT:   Yolanda C. Felix, Esquire

APPLICATION:   Asylum; withholding of removal; Convention Against Torture;
Remand

The respondent, a native and citizen of Turkey, has appealed from the Immigration Judge's decision dated October 3, 2019, denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture. Sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A) and 1231(b)(3)(A); 8 C.F.R. §§ 1208.16(c), 1208.18(a). The respondent also requests a remand of the proceedings to the Immigration Court. The appeal will be dismissed, and the motion will be denied.

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

We adopt and affirm the decision of the Immigration Judge. *Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994). The Immigration Judge found the respondent to be credible (IJ at 4). The respondent did not show that the Turkish government was unable or unwilling to control ████████, and his allegation on appeal that ████████████████████████ was not supported by the evidence (IJ at 8-9; Tr. at 40, 52, 54-55, 62-65; Exh. 4). *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062-1076 (9th Cir. 2017) (en banc) (discussing "unable or unwilling" standard). The respondent, who did not establish past persecution by the government or by individuals the government is unwilling or unable to control, also did not meet his burden to establish that he could not reasonably be expected to relocate within Turkey in order to avoid persecution (IJ at 7-9; Tr. at 58-60). 8 C.F.R. § 1208.13(b)(3)(i); *Matter of M-Z-M-R-*, 26 I&N Dec. 28, 35-36 (BIA 2012) (stating that "where persecution has not been established, the applicant bears the burden of establishing that relocation would not be reasonable unless the persecution is by a government or is government sponsored").

The respondent, who did not establish the lower burden of proof applicable to asylum, also did not establish a claim to withholding of removal, which carries a higher burden of proof. 8 C.F.R. § 1208.16(b). The Immigration Judge separately considered the respondent's application for protection under the Convention Against Torture. The Immigration Judge's finding that the respondent has not shown a likelihood that he will be tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity"

**038**

A201-683-167

is supported by the record. 8 C.F.R. § 1208.18(a)(1); *Vitug v. Holder*, 723 F.3d 1056, 1063 (9th Cir. 2013).

Nor has the respondent shown that remand is warranted for the Immigration Judge to hold a competency hearing (Respondent's Br. at 9-13). Although aliens in removal proceedings are presumed to be competent, when indicia of incompetency are present, an Immigration Judge must make a competency determination. *Matter of J-S-S-*, 26 I&N Dec. 679, 681 (BIA 2015); *Matter of M-A-M-*, 25 I&N Dec. 474, 477, 480-81 (BIA 2011). "An alien is competent for purposes of immigration proceedings if he or she has a rational and factual understanding of the nature and object of the removal proceedings, can consult with an attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses. " *Matter of J-S-S-*, 26 I&N Dec. at 681, *citing Matter of M-A-M-*, 25 I&N Dec. at 479; *see also Salgado v. Sessions*, 889 F.3d 982, 989 (9th Cir. 2018). Allegations of incompetency which relate solely to poor memory and do not reflect credible evidence of an inability to comprehend or meaningfully participate in the proceedings do not constitute indicia of incompetency. *Salgado v. Sessions*, 889 F.3d at 989.

Here, the respondent exhibited poor memory as the result of a concussion he had suffered a year or so earlier (IJ at 4; Tr. at 26, 35,45-47; Exh. 1, Credible Fear Interview at 5-6; Record of Sworn Statement at 2, 5-6), but he does not claim to suffer from mental illness and did not exhibit an inability to comprehend or meaningfully participate in the proceedings such that indicia of mental incompetency was exhibited. *Salgado v. Sessions*, 889 F.3d at 989. Accordingly, a remand for the purpose of a competency hearing is unwarranted.

Nor has the respondent shown that interpretation of the proceedings was faulty (Respondent's Br. at 14-15). The respondent did not object to the accuracy of the interpreter at the hearing, and he has not shown on appeal that the interpreter did not perform competently. *See Matter of Gomez-Beltran*, 26 I&N Dec. 765, 769 (BIA 2016), *aff'd, Gomez-Beltran v. Barr*, 792 F. App'x 498 (9th Cir. Feb. 5, 2020). The respondent's brief states that he explained his Kurdish identity to the court, but it is not in the transcript (Respondent's Br. at 15). However, the respondent did not provide an affidavit attesting to that purported error or any other errors by the interpreter.

The respondent also has not shown any violation of his statutory right to counsel pursuant to section 292 of the Act, 8 U.S.C. § 1362. On July 12, 2019, the respondent was personally served with the Notice to Appear which informed him that he may be represented, at no expense to the government, by an attorney or other individual authorized and qualified to represent persons before the Immigration Court and was accompanied by a list of organizations and attorneys which provide free legal services (Exh. 1). On July 15, 2019, the respondent was served with a Notice of Hearing containing the same advisals. At the July 25, 2019, hearing, the Immigration Judge informed the respondent that he may be represented by counsel (IJ at 2-3), and the respondent was served with a Notice of Hearing containing the same information. The hearing was reconvened on July 30, 2019, and proceedings were continued to give the respondent more time to locate an attorney (Tr. at 10-11). The respondent was again served with a Notice of Hearing containing the same information regarding counsel. A hearing was held on September 3, 2019, following which the

2

**039**

A201-683-167

respondent was served with a Notice of Hearing containing the same information regarding counsel.

On October 3, 2019, more than 2 months after he was placed in removal proceedings and informed of his right to representation by counsel, the respondent appeared without counsel for his merits hearing. We find no violation of the respondent's right to counsel. *See United States v. Moriel-Luna*, 585 F.3d 1191, 1201 (9th Cir. 2009) (Immigration Judges are "not obligated to grant indefinite continuances if [petitioner] did not produce counsel but refused to waive his right").

We have considered the respondent's remaining arguments regarding the conduct of the hearing, but the record reflects that the respondent received a full and fair hearing. The respondent has now proffered copies of pictures which he had been unable to produce before the Immigration Court because they were on his mobile phone, which was in the custody of Immigration and Customs Enforcement (ICE) (Tr. at 24; Tab A; Respondent's Br. at 17-20). However, a remand to consider this evidence is unwarranted. The respondent's testimony concerning ███████████ ███████████████████was accepted as credible, and photographs documenting the harm would not change the result in this case. *See Lata v. INS*, 204 F.3d 1241, 1236 (9th Cir. 2000) (stating that in order to prevail on a due process challenge, an alien must show error and prejudice); *Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992) (moving party must satisfy the "heavy burden" of establishing that if proceedings were remanded, the new evidence would likely change the result in the case). Accordingly, the appeal will be dismissed, and the motion will be denied.

ORDER:   The respondent's appeal is dismissed.

FURTHER ORDER:  The motion to remand is denied.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspired to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $799 for each day the respondent is in violation. *See* Section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

_____

FOR THE BOARD

**040**

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## NOTICE TO EOIR: ALIEN ADDRESS

Date: 04/09/2020

To:   Enter Name of BIA or Immigration Court I-830   Board of Immigration Appeal
Enter BIA or Immigration Court Three Letter Code@usdoj.gov   BIA

From: Enter Name of ICE Office   Immigration and Customs Enforcement
Enter Street Address of ICE Office 1564 Gateway Road
Enter City, State and Zip Code of ICE Office   Calexico, CA 92231

Respondent:   Enter Respondent's Name   OZDEMIR, Yusuf
Alien File No: Enter Respondent's Alien Number   A#201-683-167

---

This is to notify you that this respondent is:

☐   Currently incarcerated by federal, state or local authorities. A charging document has been served on the respondent and an Immigration Detainer-Notice of Action by the ICE (Form I-247) has been filed with the institution shown below. He/she is incarcerated at:

Enter Name of Institution where Respondent is being detained

Enter Street Address of Institution where Respondent is being detained

Enter City, State and Zip code of Institution where Respondent is being detained

**Enter Respondent's Inmate Number**

His/her anticipated release date is Enter Respondent's Anticipated Release Date.

☒   Detained by ICE on **Enter Date Respondent was Detained by ICE** at:   05/27/2019
Enter Name of ICE Detention Facility where Respondent is being detained

Enter Street Address of ICE Detention Facility where Respondent is being detained

Enter City, State and Zip Code of ICE Detention Facility where Respondent is being detained

☐   Detained by ICE and transferred on **Enter Date Respondent was transferred** to:
Enter Name of ICE Detention Facility where Respondent has been transferred

Enter Street Address of ICE Detention Facility where Respondent has been transferred

Enter City, State and Zip Code of ICE Detention Facility where Respondent has been transferred

☒   Released from ICE custody on the following condition(s):
   ☐   Order of Supervision or Own Recognizance (Form I-220A)
   ☐   Bond in the amount of Enter Dollar Amount of Respondent's Bond
   ☐   Removed, Deported, or Excluded
   ☒   Other

---

Upon release from ICE custody, the respondent reported his/her address and telephone number would be:
Enter Respondent's Street Address   ███████████████
Enter Respondent's City, State and Zip Code   San Diego, CA   ████
Enter Respondent's Telephone Number (including area code)   █████████████

☒   I hereby certify that the respondent was provided an EOIR-33 Form and notified that they must inform the Immigration Court of any further change of address.

ICE Official: Enter Your First, Last Name and Title     M. Williams   Deportation Officer

ICE Form I-830E (09/09)

**U.S. Department of Homeland Security**       Subject ID : ▮▮▮▮▮▮       **Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | | First | | Middle | | Sex **F** | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|---|---|

| Country of Citizenship **RUSSIA** | Passport Number and Country of Issue    **RUSSIA** | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|

| U.S. Address  ▮▮▮▮▮▮ San Diego, CALIFORNIA, ▮▮▮ | | Scars and Marks |
|---|---|---|

| Date, Place, Time, and Manner of Last Entry  **05/23/2019 16:12, CAL, FOOT** | Passenger Boarded at  **See Narrative** | F.B.I. Number | ☒ Single<br>☐ Divorced  ☐ Married<br>☐ Widower  ☐ Separated |
|---|---|---|---|

| Number, Street, City, Province (State) and Country of Permanent Residence | | | Method of Location/Apprehension  **ISP NA** |
|---|---|---|---|

| Date of Birth  **Age:** ▮ | Date of Action  **05/26/2019** | Location Code  **CAL/SND** | At/Near  **CAL** | Date/Hour  **05/23/2019 13:26** |
|---|---|---|---|---|

| City, Province (State) and Country of Birth  ▮▮▮ **RUSSIA** | AR ☒ | Form : (Type and No.) Lifted ☐ Not Lifted ☐ | By |
|---|---|---|---|

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|

| Immigration Record  **NEGATIVE** | Criminal Record  **None Known** |
|---|---|

| Name , Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children  **None** |
|---|---|

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|

| Monies Due/Property in U.S. Not in Immediate Possession  **None Claimed** | Fingerprinted? ☒ Yes ☐ No | Systems Checks  **See Narrative** | Charge Code Words(s)  **See Narrative** |
|---|---|---|---|

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary  Hr | Employed from/to |
|---|---|---|---|

Narrative (Outline particulars under which alien was located/apprehended.  Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation.  Indicate means and route of travel to interior.)

FIN: ▮▮▮▮▮▮                              Left Index fingerprint                    Right Index fingerprint

**Subject Health Status**
----------------


**Current Criminal Charges**
-----------------------
05/23/2019 - 8 USC 1182 - ALIEN INADMISSIBILITY UNDER SECTION 212


**Current Administrative Charges**

...(CONTINUED ON I-831)

                                        MARIO IBARRA
                                        CBPO
Alien has been advised of communication privileges _____ (Date/Initials)    (Signature and Title of Immigration Officer)

| Distribution:  **FILE**  **BOARD**  **COPY** | Received:  (Subject and Documents)  (Report of Interview) |
|---|---|
| | Officer: **MARIO IBARRA** |
| | on: **May 26, 2019** _____ (time) |
| | Disposition: **Expedited Removal with Credible Fear** |
| | Examining Officer: **JOSE CORONADO** |

Form I-213 (Rev. 08/01/07)

042

U.S. Department of Homeland Security

I-213

Continuation Page for Form _____

| Alien's Name | File Number | Date |
|---|---|---|
| ██████████████ | ████████████  Event No: ██████████████ | 05/26/2019 |

```
-------------------------------
05/23/2019 - 212a7AiI - IMMIGRANT WITHOUT AN IMMIGRANT VISA


Previous Criminal History
-------------------------------------
Subject has no criminal history

BOARDED AT
---------------------
CALEXICO


Records Checked
-----------------
ATS-P Neg
CIS Neg
EARM Neg
IAFIS Neg
CCD Neg
NCIC Neg
TECS Neg


SECTION CODES
------------
904

null:
```

On May 23rd, 2019 at approximately 1100 hours, ████████████ with DOB (████████████) arrived at the Calexico West Port of Entry. ███████ identified herself using her Russian passport ███████ to CBPO Hernandez and requested asylum.

In secondary a personal search was conducted on ███████ approved by SCBPO Hernandez, conducted by CBPO A. Hernandez and witnessed by CBPO Rojo, with negative results. ████████ was then escorted to the Admissibility Enforcement Unit (AEU) office for further processing.

On or about on May 26th 2019, in the AEU office, ███████ was put under oath using Compass Language interpreter ID# 324637 stated to CBPO Ibarra she was born in ███████ Russia, and lived in Turkey.

███████ stated he wanted to apply for asylum because ███████ ████████████████ . ████████ stated that because Turkey never actually harmed only harassed ███████ . ██████████ It should be noted that ███████ was ███████ . ███████ stated that she did not go to any other country in the European continent because she lacked the funds to do so. It should be noted that even though Europe is closer to Turkey, ███████ managed to get the necessary funds to come to the United States which is farther than Europe. ███████ also stated that she was never in any shape or form being persecuted from Turkey or Russia because of her religious beliefs or political views. ███████ also stated that she is not sure if she would be harmed but she claimed fear if she was returned back to her native Russia. ███████ stated that her true intention in entering the United States is to get a

| Signature | Title |
|---|---|
| MARIO IBARRA | CBPO |

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**          Continuation Page for Form ___I-213___

| Alien's Name | File Number | Date |
|---|---|---|
| ███████████ | ███████████ | 05/26/2019 |
| | **Event No:** ███████ | |

cure from her disease and live a normal life.


Disposition: ███████████ was found to be inadmissible into the U.S. pursuant to section 212(a) (7) (A) (i) (I) Intended Immigrant of the Immigration and nationality Act as amended. ███████ was processed for an Expedited Removal pending a Credible Fear interview under the provision of section 240 on the INA. Forms I-860 and M-444 were executed. ███████ expressed fear of harm and fear of persecution if returned to her country of origin Russia.


Other Identifying Numbers
---------------------------------------
ALIEN-███████
Other-███████████
Other-███████████████

| Signature | Title |
|---|---|
| MARIO IBARRA | CBPO |

Form I-831 Continuation Page (Rev. 08/01/07)

**044**

DEPARTMENT OF HOMELAND SECURITY

## NOTICE TO APPEAR

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

File No:

In the Matter of:

Respondent: _____ currently residing at:

c/o DHS MTC, IRDF, 1572 Gateway Road, Calexico, CA 92231     +1 (760) 618-7200

(Number, street, city and ZIP code)                          (Area code and phone number)

[X] You are an arriving alien.

[ ] You are an alien present in the United States who has not been admitted or paroled.

[ ] You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of RUSSIA and a citizen of RUSSIA;

3. You applied for admission at the Calexico, CA. West Port of Entry on or about May 23, 2019.

4. You did not then possess or present a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document as required by the Immigration and Nationality Act.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

[X] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

[ ] Section 235(b)(1) order was vacated pursuant to:     [ ] 8CFR 208.30     [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

EOIR-IMPERIAL, 1572 Gateway Road, Calexico, CA. 92231

(Complete Address of Immigration Court, including Room Number, if any)

on ____TBD____ at ____TBD____ to show why you should not be removed from the United States based on the
(Date)            (Time)

charge(s) set forth above.

G. PACHECO, SDDO
2022

(Signature and Title of Issuing Officer)

Date: 07/11/2019 _____ Calexico, CA _____

(City and State)

**045**

## Notice to Respondent

**Warning: Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the Department of Homeland Security immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act (the Act).

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____
*(Signature of Respondent)*

_____
*(Signature and Title of Immigration Officer)*

Date: _____

## Certificate of Service

This Notice To Appear was served on the respondent by me on __07/12/2019__ , in the following manner and in compliance with section 239(a)(1) of the Act.

☒ in person ☐ by certified mail, returned receipt # _____ requested ☐ by regular mail

☒ Attached is a credible fear worksheet.

☒ Attached is a list of organization and attorneys which provide free legal services.

The alien wa[        ] the _____Russian_____ language of the time and place of his or her hearing and of the consequence[        ] s provided in section 240(b)(7) of the Act.

DEPORTATION OFFICER

_____ _____
*(S[  ] if Personally Served)* *(Signature and Title of officer)*

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## NOTICE TO EOIR: ALIEN ADDRESS

Date: 04/09/2020

To:   Enter Name of BIA or Immigration Court I-830   Board of Immigration Appeals
      Enter BIA or Immigration Court Three Letter Code@usdoj.gov   BIA

From: Enter Name of ICE Office   Immigration and Customs Enforcement
      Enter Street Address of ICE Office  1564 Gateway Road
      Enter City, State and Zip Code of ICE Office   Calexico, CA 92231

Respondent:   Enter Respondent's Name   ▉▉▉▉▉▉▉▉
              Alien File No:  Enter Respondent's Alien Number   A#▉▉▉▉▉▉▉

---

This is to notify you that this respondent is:

[ ]  Currently incarcerated by federal, state or local authorities. A charging document has been served on the respondent and an Immigration Detainer-Notice of Action by the ICE (Form I-247) has been filed with the institution shown below. He/she is incarcerated at:

Enter Name of Institution where Respondent is being detained

Enter Street Address of Institution where Respondent is being detained

Enter City, State and Zip code of Institution where Respondent is being detained

**Enter Respondent's Inmate Number**

His/her anticipated release date is Enter Respondent's Anticipated Release Date.

[X]  Detained by ICE on **Enter Date Respondent was Detained by ICE** at:   05/28/2019
Enter Name of ICE Detention Facility where Respondent is being detained

Enter Street Address of ICE Detention Facility where Respondent is being detained

Enter City, State and Zip Code of ICE Detention Facility where Respondent is being detained

[ ]  Detained by ICE and transferred on **Enter Date Respondent was transferred** to:
Enter Name of ICE Detention Facility where Respondent has been transferred

Enter Street Address of ICE Detention Facility where Respondent has been transferred

Enter City, State and Zip Code of ICE Detention Facility where Respondent has been transferred

[X]  Released from ICE custody on the following condition(s):
     [ ]  Order of Supervision or Own Recognizance (Form I-220A)
     [ ]  Bond in the amount of Enter Dollar Amount of Respondent's Bond
     [ ]  Removed, Deported, or Excluded
     [X]  Other

---

Upon release from ICE custody, the respondent reported his/her address and telephone number would be:
Enter Respondent's Street Address   ▉▉▉▉▉▉▉▉
Enter Respondent's City, State and Zip Code   San Diego, ▉▉▉▉▉▉
Enter Respondent's Telephone Number (including area code)   ▉▉▉▉▉▉▉

[X]  I hereby certify that the respondent was provided an EOIR-33 Form and notified that they must inform the Immigration Court of any further change of address.

ICE Official: Enter Your First, Last Name and Title   M. Williams   Deportation Officer

ICE Form I-830E (09/09)

**047**



*Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
500 12th Street. SW
Washington, D.C. 20536

U.S. Immigration
and Customs
Enforcement

March 27, 2020

MEMORANDUM FOR:    Detention Wardens and Superintendents

THROUGH:    Field Office Directors

FROM:    Enrique M. Lucero
    Executive Associate Director
    Enforcement and Removal Operations

SUBJECT:    Memorandum on Coronavirus Disease 2019 (COVID-19)
    Action Plan, Revision 1

Background:

U.S. Immigration and Customs Enforcement (ICE) continues to monitor the spread of
Coronavirus Disease 2019 (COVID-19) and to work in conjunction with select U.S.
Department of Homeland Security (DHS) Component leadership and the Acting Secretary to
implement a mitigation strategy.

To ensure a unified and preventative response, the ICE Enforcement and Removal Operations
(ERO), ICE Health Service Corps (IHSC), Custody Management Division, and Field
Operations are providing the following guidance. The combination of a dense and highly
transient detained population presents unique challenges for ICE efforts to mitigate the risk of
infection and transmission. Consequently, these measures were developed to reduce exposure
to COVID-19, protect the detained population, and optimize employee health and availability
for duty.

This memorandum only applies to IHSC-staffed and non-IHSC-staffed, ICE-dedicated
facilities. For intergovernmental partners and non-dedicated facilities, ICE defers to local, state,
tribal, territorial, and federal public health policies and authorities, including adherence with
state laws on communicable disease reporting, but recommends actions contained in this
memorandum be considered as best practices. Questions and concerns related to the following
Action Plan can be addressed to: ICE_ERO_CMD@ice.dhs.gov.

Please see the recently-issued Centers for Disease Control and Prevention (CDC) Interim
Guidance: Managing COVID-19 in Correctional/Detention Facilities for additional
information.

Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1
Page 2

Action Plan:

**STAFF HIRING:** Wardens and facility staff should continue to meet any personnel staffing plan and staffing criteria outlined in the Performance Work Statement (PWS) and terms and conditions of their negotiated contract or agreement for medical staff and guard services. Facilities are expected to be appropriately staffed to meet established work schedules, rest periods, and to ensure the delivery of detainee medical and mental health care as it relates to the continually evolving impact of COVID-19.

**LOGISTICS:** Wardens and Facility Administrators should assess their inventories of food, medicine, cleaning supplies, personal protective equipment (PPE), and facility operational practices, and consistently maintain services and supplies to assure the safety, security, health, and well-being of ICE detainees. Facilities should have updated pandemic plans and policies as well as established quarantine and/or isolation areas within their facilities in the event they are needed. Alcohol-based hand sanitizer with at least 60 percent alcohol should be available in visitor entrances, exits, and waiting areas. In addition, alcohol-based hand sanitizer should be made available to staff and detainees in the secure setting to the maximum extent possible.

**SOCIAL VISITATION/TELEPHONIC COMMUNICATION:** As of March 13, 2020, social visits to/with ICE detainees at all detention facilities are suspended until further notice in order to mitigate the potential introduction of COVID-19 into the facilities. ICE recognizes the considerable impact of suspending personal visitation, and requests maximizing detainee use of teleconferencing, video visitation (e.g., Skype, FaceTime), email, and/or tablets, with extended hours where possible.

Detention facilities should make a timely effort to identify indigence in the detainee population. A detainee is considered "indigent" if he/she has less than $15.00 in his/her account for ten days. These detainees must be afforded the same telephone access and related privileges as other detainees. Each facility must ensure all detainees are able to make calls to the ICE-provided list of free legal service providers and consulates at no charge to the detainee or the receiving party, and that indigent detainees may request a call to immediate family or others in personal or family emergencies or on an as-needed basis to maintain community ties.

**LEGAL VISITS:** Detainee access to legal representatives remains a paramount requirement and should be accommodated to the maximum extent practicable. Legal visitation must continue unless determined to pose a risk to the safety and security of the facility.

Non-contact legal visitation (e.g., Skype or teleconference) should be offered first to limit exposure to ICE detainees, but in person contact should be permitted if determined essential by the legal representative. Prior to the in-person visit, the legal representative must undergo the same screening required for staff entry into the facility. The ultimate legal visit approving authority lies with the Warden or Facility Administrator; however, the facility should notify its local Field Office Director as soon as possible of any denied legal visits.

**LEGAL RIGHTS GROUP PRESENTATIONS:** Government-sponsored Legal Orientation Programs (LOPs), carried out by the Department of Justice Executive Office for Immigration Review (EOIR) and authorized by congressional appropriations, currently operate at a limited

Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1
Page 3

number of detention sites, and may continue to conduct detainee presentations. No more than

four LOP presenters may be allowed in the facility at any time and must undergo the same
screening required for staff entry into the facility. Non-LOP legal rights group presentations
offered by volunteers are suspended until further notice.

**STAFF-DETAINEE COMMUNICATION VISITS:** Field Office Directors should remain
aware that detainees may experience increased feelings of fear and confusion during this time.
Regular communication with staff is particularly important. Detainees should have frequent
opportunities for informal contact with facility managerial and supervisory staff and with ERO
field office staff.

Field Office Directors should monitor both facility staff and ERO officers to ensure they
continue to interact with detainees. ICE staff-detainee communication may be conducted in-
person (with appropriate risk reduction protocols to protect ERO officers, detainees, and facility
staff) or through non-contact visitation using videoconferencing, phone calls, e-mail, or other
communication services.

**CONTRACTORS:** Contractors performing essential services or maintenance on essential
systems in ICE detention facilities must continue to be provided facility access and must
undergo the same screening required for staff entry into the facility. Examples of essential
services include medical and mental health services, telephone access, cleaning, laundry, waste
disposal, and critical infrastructure repairs.

Facility annual inspections by the ICE inspections contractor, The Nakamoto Group, are
suspended for 30 days from the issuance date of this memorandum.

**VOLUNTEERS:** Volunteer visits to ICE detention facilities are suspended until further notice
unless approved by the Assistant Directors for Field Operations and Custody Management.
The only exception is the facility Chaplain, who may continue to offer availability for
individual and group pastoral care but must undergo the same screening required for staff
entry into the facility. Other volunteers, contractors, and community groups that augment
and enhance the religious program are suspended until further notice to reduce the risk of
possible transmission of COVID-19 to detainees.

**TOURS:** Facility tours are suspended until further notice, excluding Members of Congress,
Congressional Member Delegations (CODELs), and Congressional Staff Delegations
(STAFFDELs) who will not be prevented from accessing facilities for the purpose of
conducting oversight. To safeguard visitors, detainees, ICE and facility staff, congressional
visitors may be subject to special screening procedures congruent with staff facility entry
screening. Congressional visitors should be advised of standard hygiene practices to help
prevent the spread of disease (i.e., washing hands, avoiding close contact) and should be made
aware of available hand washing stations within the facility.

**STAFF TRAINING:** All ERO in-person staff training related to the ICE detention standards
or facility compliance is suspended until further notice, including conferences, Contracting
Officer Representative (COR) training, and Field Office Compliance Training. Wardens and
Facility Administrators will determine the training schedule for facility staff. All
staff licenses and certifications shall be maintained.

Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1
Page 4

**SCREENING OF FACILITY STAFF**: Enhanced health screening of both ICE and facility staff should be implemented by ICE detention facilities in geographic areas with "sustained community transmission." These geographical areas are determined by the CDC and information is available at:
https://www.cdc.gov/coronavirus/2019-ncov/cases-in-us.html. Health screening includes self-reporting symptoms associated with COVID-19 infection and a temperature check.

Wardens and Facility Administrators in those geographical areas should collaborate with their Health Services Administrator to designate a trained staff member available on all shifts to conduct verbal screening and record temperature checks. It is not required that the trained staff member be medical personnel; however, the staff member must have documented training and protect the privacy of those being screened.

Verbal screening for symptoms of COVID-19 and contact with COVID-19 cases should include the following questions based on Interim Guidance: Managing COVID-19 in Correctional/Detention Facilities:

- Today or in the past 24 hours, have you had any of the following symptoms?
    o Fever, felt feverish, or had chills?
    o Cough?
    o Difficulty breathing?
- In the past 14 days, have you had contact with a person known to be infected with COVID-19 where you were not wearing the recommended proper personal protective equipment (PPE)?

The following is a protocol to safely check an individual's temperature:
- Perform hand hygiene.
- Put on a face mask, eye protection (goggles or disposable face shield that fully covers the front and sides of the face), gowns/coveralls, and a single pair of disposable gloves.
- Check the individual's temperature.
- If performing a temperature check on multiple individuals, ensure that a clean pair of gloves is used for each individual and that the thermometer has been thoroughly cleaned in between each check.
- If disposable or non-contact thermometers are used and the screener did not have physical contact with an individual, gloves do not need to be changed before the next check. If non-contact thermometers are used, they should be cleaned routinely as recommended by CDC for infection control.
- Remove and discard PPE.
- Perform hand hygiene.

Staff who do not clear the screening process, or refuse the enhanced health screening must be denied entry and advised to follow CDC-recommended steps for persons who are sick with COVID-19 symptoms.

If PPE supply is limited, consider other PPE strategies based on CDC Guidance | Strategies for Optimizing the Supply of PPE.

Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1
Page 5

If staff register a temperature greater than or equal to 100.4 degrees (Fahrenheit), they should be denied entry to the facility and placed on leave per the employer's administrative policies.

**DETAINEE SCREENING:** IHSC developed guidance for IHSC-staffed facilities to assist in the risk assessment and management of detained individuals with potential exposure to COVID-19, and guidance was disseminated to non IHSC-staffed ICE detention facilities for potential adoption of this guidance at their respective sites. This guidance addresses intake medical screenings, monitoring, encounters, laboratory testing, and public health actions. The CDC remains the authoritative source for information on how to protect individuals and reduce exposure to COVID-19. ICE continues to encourage facilities to follow CDC guidelines and those of their state and local health departments for non IHSC-staffed ICE detention facilities.

ICE requests that Wardens and Facility Administrators ensure ICE detainees are provided guidance and education in a language that they fully comprehend regarding basic hygiene and measures to maintain health. Links for detainee/patient education resources, in a variety of languages, are maintained in the IHSC guidance and information on the CDC website.

**MODIFIED OPERATIONS:** Wardens and Facility Administrators should implement modified operations to maximize social distancing in facilities, as much as practicable. For example, Wardens and Facility Administrators should consider staggered mealtimes and recreation times in order to limit congregate gatherings. All community service projects are suspended until further notice.

**CONSIDERATIONS FOR DETAINEE RELEASE:** Upon notification of a detainee's pending release, a qualified health care provider will conduct a temperature screening:

- Temperature checks will be completed no more than 12 hours prior to facility departure and documented in the detainee medical record and transfer summary.
- Temperature checks must be completed and documented prior to providing ICE with transfer summary documents.

When considering the release of detainees into the United States with confirmed or suspected COVID-19, the following must be addressed for detainees exposed to an individual with confirmed or suspected COVID-19 or detainees under monitoring for having epidemiologic risk of exposure to COVID-19:

- If the detainee will be released prior to completion of the recommended medical isolation, cohorting, or monitoring period, the state or local health department in the facility jurisdiction should be notified of the detainee's release:
  - The health department should be provided with the detainee's name, intended address, email address, and all available telephone numbers.

- Facilitate safe transport, continued shelter, and medical care, as part of release planning:
  - Provide information regarding any potential community resources to promote continuity of care.
  - Attempt to facilitate transportation coordination through a family or friend.

Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1
Page 6

- o  Advise the detainee to avoid public transportation, commercial ride sharing (e.g., Uber, Lyft), and taxis.

- Provide the detainee the CDC's *What To Do if You Are Sick* fact sheet.

If this guidance creates any contractual issues, please contact your respective Contracting Officer Representative.



**UPDATE: Please see the updated guidance below.  The previous version of this guidance is rescinded.**

This message is sent from Peter B. Berg, (a)Assistant Director, Field Operations

**To:**        Field Office Directors and Deputy Field Office Directors

**Subject:**        COVID-19 Detained Docket Review

**Background:**

U.S. Immigration and Customs Enforcement (ICE) has taken a number of significant and proactive measures in response to the Coronavirus Disease 2019 (COVID-19) pandemic, in order to mitigate the spread of COVID-19 to aliens detained in its custody, its workforce, and stakeholders at its detention facilities.  As more becomes known about the virus, ERO will continue to update its practices and guidance in this regard.  General ICE COVID-19 guidance is available here and will be updated and supplemented on an ongoing basis.

On March 18, 2020, you were directed to review the cases of aliens detained in your area of responsibility who were over the age of 70 or pregnant to determine whether continued detention was appropriate.  The Centers for Disease Control and Prevention (CDC) has developed a list of categories of individuals identified as potentially being at higher-risk for serious illness from COVID-19.  Expanding on that list, ERO has identified the following categories of cases that should be reviewed to re-assess custody:

- Pregnant detainees or those having delivered in the last two weeks
- Detainees over 60 years old
- Detainees of any age having chronic illnesses which would make them immune-compromised, including but not limited to:
  - Blood Disorders
  - Chronic Kidney Disease
  - Compromised immune system (e.g., ongoing treatment such as chemotherapy or radiation, received an organ or bone marrow transplant, taking high doses of corticosteroids or other immunosuppressant medications)
  - Endocrine disorders

**054**

- Metabolic disorders
- Heart disease
- Lung disease
- Neurological and neurologic and neurodevelopment conditions

As part of your ongoing application of the CDC's Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (available here), please identify all cases within your AOR that meet any of the criteria above and validate that list with assistance from IHSC or your Field Medical Coordinator to ensure the conditions listed are still present and do result in the detainee potentially having a higher risk for serious illness from COVID-19.  After identifying a case as meeting any of the above criteria, you should review the case to determine whether continued detention remains appropriate in light of the COVID-19 pandemic.

The presence of one of the factors listed above should be considered a significant discretionary factor weighing in favor of release.  To be clear, however, it may not always be determinative.  Field offices must remain cognizant of the requirements of mandatory detention.  Section 236(c) of the Immigration and Nationality Act (INA) mandates the detention of certain categories of criminal and terrorist aliens during the pendency of removal proceedings.  Such aliens may not be released in the exercise of discretion during the pendency of removal proceedings even if potentially higher-risk for serious illness from COVID-19.  INA § 236(c); 8 C.F.R. § 236.1(c)(1)(i).  Such aliens may only be released following a final order issued by an immigration judge, the Board of Immigration Appeals, or a federal court granting the alien relief, dismissing proceedings, or terminating proceedings.  Similarly, pursuant to section 241(a)(2), certain criminal and terrorist aliens subject to a final order of removal may not be released during the 90-day removal period even if potentially higher-risk for serious illness from COVID-19.  INA § 241(a)(2).  For alien's subject to discretionary detention under section 236(a), please remember that release is prohibited, even if the alien is potentially higher-risk for serious illness from COVID-19, if such release would pose a danger to property or persons.  8 C.F.R. § 236.1(c)(8).

When reviewing cases of alien's subject to discretionary detention under 236(a), the following must be completed:

- **Cases involving any arrests or convictions for any crimes that involve risk to the public regardless of the date of arrest or conviction must be reviewed and approved by a Deputy Field Office Director (DFOD) or higher before a determination is made to release.**
  - Examples of crimes that involve a risk to the public include any crime that: involves any form of violence, driving while intoxicated, threatening behaviors, terroristic threats, stalking, domestic violence, harm to a child, or any form of assault or battery.  This list is not intended to be

> comprehensive. If there is any doubt whether a crime involves risk to the public, consult with your Office of the Principal Legal Advisor (OPLA) field location and your respective Deputy Assistant Director for Domestic Operations before a custody redetermination is completed.

- You may consider the age of an arrest or conviction as a mitigating or an aggravating factor, but the age of an arrest or a conviction does not automatically outweigh public safety concerns.

With regard to arriving aliens and certain other aliens eligible for consideration of parole from custody, under current circumstances and absent significant adverse factors, the fact that an alien is potentially higher-risk for serious illness from COVID-19, may form the basis for a determination that "continued detention is not in the public interest," justify release under 8 C.F.R. § 212.5(b)(5).

For other aliens for whom there is discretion to release, field offices remain responsible for articulating individualized custody determinations, taking into consideration the totality of the circumstances presented in the case. The fact that an alien is potentially higher-risk for serious illness from COVID-19 should be considered a factor weighing in favor of release. You may also consider alternatives to detention consistent with ICE ATD policies, if ATD is determined to sufficiently mitigate the risk of flight.

Any releases attributed to reviews of COVID-19 susceptibility shall be documented in the ENFORCE Alien Removal Module (EARM) under Special Class - COVID-19 Chronic Care Release. As previously communicated, these individuals should be placed on ATD if possible.

Please contact your local OPLA field location should you have any questions or concerns regarding your authority to release in any individual case.

**For any questions on this guidance, please contact your respective Deputy Assistant Director for Domestic Operations.**

**Limitation on the Applicability of this Guidance**. This message is intended to provide internal guidance to the operational components of U.S. Immigration and Customs Enforcement. It does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.